Hospital Association of Pennsylvania et al., Petitioners *v.* Leonard Bachman, M.D., Secretary of Health et al., Respondents.

Argued December 6, 1978, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*James H. Stewart, Jr.,* with him *Michael C. Fox,* and *Nauman, Smith, Shissler & Hall,* for petitioners.

*John G. Knorr, III,* with him *Jeffrey B. Schwartz,* for respondent.

OPINION BY JUDGE WILKINSON, JR., February 5, 1979:

The petitioners would have us enjoin the Secretary and the Department of Health (Department) from implementing and enforcing its regulations concerning general and public hospitals as published in 7 Pa. B. 3631, December 10, 1977, effective June 10, 1978. We must decline to do so.

After a hearing on an application for a preliminary injunction, the enforcement of certain paragraphs was enjoined temporarily until final determination on the merits. This temporary injunction will be dismissed.

Fortunately for the brevity of this opinion, the interesting and complicated history of hospital supervision and regulation in Pennsylvania was recently set forth by Edward F. Shay, Esq. in 51 Temp. L.Q. 187 (1978) under the title, "Pennsylvania Law of Hospital Supervision: Its Origin and Present Meaning."[1] No attempt will be made to briefly recapitulate this history. Suffice it to say that the regulations in issue were the result of a redraft of regulations originally adopted by the Department of Public Welfare and last revised in 1966. Pursuant to Reorganization Plan No. 2 of 1973, Approved May 22, 1973, 71 P.S. §755-2, the Department of Health continued the revision, culminating in the publication of the very comprehensive rules and regulations here in issue. Section 1 of Reorganization Plan No. 2 of 1973 provided:

> The functions, powers and duties of the Department of Welfare with regard to the supervision and licensing of special and general hospitals, as set forth in Articles 9 and 10 of the act of

---

[1] Counsel for petitioners points out that the author Edward F. Shay was a consultant to Health Policies Prospectives, Inc., a paid consultant to respondents in the drafting of the regulations in question here.

June 13, 1967 (P.L. 31, No. 21) known as the 'Public Welfare Code' are hereby transferred to the Department of Health.

Although much time has been devoted by both counsel in developing the precise source of authority for the respondents to publish rules and regulations governing the operation of hospitals in Pennsylvania, the issue here is not whether there is authority to issue rules but whether the authority has been exceeded by publishing overly broad and unreasonable rules.

Just as the Temple Law Quarterly article, *supra,* has set forth the history of the regulation and supervision of hospitals in Pennsylvania, so has Justice POMEROY's opinion in *Girard School District v. Pittenger,* Pa. , 392 A.2d 261 (1978) set forth the law regarding the perimeter of the rule making authority. *See also, Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 313 A.2d 156 (1973); *Pennsylvania Human Relations Commission v. Chester School District,* 427 Pa. 157, 233 A.2d 290 (1967). These cases establish that the yardstick by which we measure the limits of authority is essentially whether the rules are reasonable. The following statement from *Uniontown Area School District, supra* at 77, 313 A.2d at 169, was quoted by Justice MANDERINO in *Pennsylvania Bankers Association v. Secretary of Banking,* Pa. , 392 A.2d 1319, 1323-24 (1978):

A court, in reviewing such a regulation, is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action . . . involved, it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to an-

other. Error or unwisdom is not equivalent to abuse. What has been ordered must appear to be 'so entirely at odds with fundamental principles . . . as to be the expression of a whim rather than an exercise of judgment.'

We will not set forth here all the provisions of Articles 9 and 10 of the Public Welfare Code, 62 P.S. §§901-1059. We will merely quote from Section 921, 62 P.S. §921:

(b) The term 'institution' shall include . . . hospitals. . . .

(c) The department shall establish standards for the safe and adequate care of individuals, not inconsistent with the laws of this Commonwealth and the rules and regulations of the various departments of the Commonwealth, for all such institutions within this Commonwealth, which standards shall make adequate and proper provisions for (i) fire protection, (ii) water supply and sewage disposal, (iii) sanitation, (iv) lighting and heating, (v) ventilation, (vi) safety, (vii) equipment, (viii) bed space, (ix) keeping of records of identification of residents in the institution and their next of kin, of medical care provided and all pertinent admission and discharge data, and (x) humane care.

. . . .

(d) The department shall be responsible for the maintenance of the standards herein provided; and for that purpose the department or its duly authorized representative shall have free and full access to the premises and records mentioned in subsection (c) of this section of any such institution and full opportunity to interrogate or interview any officer, employe or resident thereof.

We cannot agree that the listing of the 10 areas that the rules shall cover is restrictive of the general authority to establish standards for the safe and adequate care of individuals. However, in any event, one of the 10 areas is the all inclusive area of "humane care." Nor can we agree that the Department is under restrictions because in other grants of authority the reference made to the Department's setting minimum standards is restrictive. No such restrictive term is used in Section 921, if it be restrictive. Indeed, after the Department adopts a standard it becomes the minimum standard.

We find no merit in the petitioners' argument that these rules invade "management prerogatives." These are essentially the arguments that were persuasive to this Court in *Girard School District v. Pittenger,* 29 Pa. Commonwealth Ct. 176, 370 A.2d 420 (1977) but were rejected on appeal by our Supreme Court. *See Girard School District,* Pa. , 392 A.2d 261.

As indicated previously this leaves us with essentially the argument that the rules are either overly specific or unnecessarily vague and in either and all events are unreasonable. We accept petitioners' argument that the Department designed the rules to conform with the requirements of the Joint Commission on Accreditation of Hospitals (JCAH) insofar as possible. JCAH is a voluntary organization of hospitals to which most hospitals in Pennsylvania belong. This would seem to be an almost irrefutable argument for the reasonableness of the Department's rules. To put it another way, the Department is merely requiring of the petitioners what the petitioners require of themselves. We are not persuaded by the petitioners' argument that the "inspectors" from JCAH are more capable and have more latitude than will be the case of the inspectors from the Department. Indeed, it is

suggested in petitioners' brief that there have been discussions about reducing the number of inspections hospitals would be required to undergo by having full state inspection only every other year, to-wit, the year that the hospital was not inspected by JCAH. If this be the case then surely it is anticipated that the standards of inspection and required compliance will be the same.

In addition to the argument that in the overall the rules and regulations are unreasonable, petitioners identify some 300 sections that are specified to be unreasonable. These include but are not limited to the sections, the enforcement of which we preliminarily enjoined. It may very well be that after their enforcement begins some, indeed many, of these rules may prove unreasonable. However, based on this record and postulated hypothetical situations, we are not prepared to so hold. If such should prove to be the case and the Department does not afford relief, this decision shall not be considered as dispositive of an individual attack on the specific application of individual rules. As our Supreme Court did in *Girard, supra* at , 392 A.2d at 265, "We leave for another day any question that might be posed by irreconcilable state and local [hospital] regulations."

Accordingly, we will enter the following

### ORDER

AND Now, February 5, 1979, the motion of the respondents for summary judgment is granted and the motion of the petitioners for summary judgment is dismissed.

The temporary injunction issued by this Court by order dated May 15, 1978, is dissolved.

Judge MACPHAIL dissents.

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

The majority has ample case law precedent to support its conclusion. But I must dissent to again voice my opposition to what now appears to be an established rule of law that a regulatory agency, given rule making power, has unfettered authority to adopt a tome of regulations within its field subject only to the caveat that within its covers there may be some beyond that authority by which they are promulgated, a subject which the judiciary will only consider on a case-by-case basis.

This functional approach is of little solace to those who must bear the weight of this burden with those similarly regulated while one or more of them test the validity of a particular regulation. When the judiciary is crying out for relief from drowning in a sea of litigation, when regulations are impacting almost every aspect and dimension of our lives and with the cost of litigation almost beyond the reach of all but the poor and the affluent, we do a disservice to the vast majority of our citizens and institutions in perpetrating such a rule of law.

Judge MENCER joins in this dissent.