477 A.2d 1333

**ARSENAL COAL COMPANY, et al., Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, et al., Appellees.**

Supreme Court of Pennsylania.

Argued April 12, 1984.

Decided May 31, 1984.

Steven L. Friedman (argued), Stephen C. Braverman, Dilworth, Paxson, Kalish & Kauffman, James J. Curran, Jr., Edward E. Kopko, for appellant.

John C. Dernbach, Asst. Counsel, Barbara H. Brandon, Harrisburg, for appellee.

Before LARSEN, FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an opinion and order of the Commonwealth Court[1] sustaining the preliminary objections of appellee Department of Environmental Resources (Department) to a Petition for Review in the Nature of a Complaint in Equity filed by fifty-five anthracite coal mine operators and producers (Appellants), engaged in the business of mining and selling anthracite coal, and subject to licensure and regulation by the Department of Environmental Resources. The petition names as respondents the Department and its Secretary.

Following the adoption by the Environmental Quality Board of a comprehensive recodification of regulations governing the anthracite industry, and prior to enforcement of the regulations against any of the Appellants, this action was initiated invoking the original jurisdiction of the Commonwealth Court, 42 Pa.C.S.A. § 761(a)(1), seeking preliminary and permanent injunctions enjoining the Department

---

1. *Arsenal Coal Co. et al. v. Comm., Dept. of Environmental Resources,* 71 Pa. Commonwealth Ct. 187, 454 A.2d 658 (1983).

from implementing or enforcing the regulations, appearing at 25 Pa.Code, Chapters 86 and 88, initially published at 10 *Pa.Bull.* 4789 *et seq.* (December 20, 1980), and 12 *Pa.Bull.* 2473 *et seq.* (July 31, 1982), and approved by the United States Department of Interior, Office of Surface Mining on July 12, 1982. Appellants claim that the regulatory enactment is invalid as having been adopted in violation of act of the General Assembly of this Commonwealth specifically limiting the rulemaking power of the Environmental Quality Board with regard to the regulation of anthracite mining, Act of October 10, 1980, P.L. 835, No. 155, amending the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, as amended, 52 P.S. § 1396.1 *et seq.*

The Commonwealth Court dismissed Appellants' petition on the basis that Appellants failed to exhaust available administrative remedies, whereupon direct appeal to this Court was taken. We reverse.

This case arises from the enactment by the United States Congress on August 3, 1977 of the Surface Mining Control and Reclamation Act of 1977, Pub.L. 95–87, Title I, § 101, 91 Stat. 447, 30 U.S.C. §§ 1201 *et seq.* (federal Act), requiring states regulating coal mining activities to conform to minimum procedural and substantive requirements set forth in that Act and in regulations promulgated by the Department of Interior, Office of Surface Mining, pursuant to it.

The requirements established by the federal Surface Mining Act are comprehensive. However, in accord with the legislative view that the *anthracite* industry was then adequately regulated on the state level, *Congressional Record,* H–23774 (July 14, 1974), the Act specifically exempts the regulation of anthracite mining, in four specific areas, from the federal requirements and permits the state to continue with the state program in those areas in existence on the effective date of enactment of the federal Act, August 3, 1977. Accordingly, Section 529(a) of the federal Act mandates that the current state regulatory program be

adopted by the Secretary of the Interior as the regulatory program applicable to the specific state:

> (a) The Secretary is hereby authorized to and shall issue separate regulations according to time schedules established in this chapter for anthracite coal surface mines, if such mines are regulated by environmental protection standards of the State in which they are located. Such alternative regulations shall adopt, in each instance, *the environmental protection provisions of the State regulatory program in existence on [the date of enactment of this Act] August 3, 1977, in lieu of sections 1265 and 1266 of this title.* Provisions of sections 1259 and 1269 of this title are applicable *except for specified bond limits and period of revegetation responsibility. All other provisions of this Act apply* and the regulation issued by the Secretary of Interior for each State anthracite regulatory program shall so reflect: Provided, however, That upon amendment of a State's regulatory program for anthracite mining or regulations thereunder in force in lieu of the above-cited sections of this chapter, the Secretary shall issue such additional regulations as necessary to meet the purposes of this chapter.

Section 529(a), 30 U.S.C. § 1279(a) (emphasis supplied). The federal provisions which may thus be superseded by the correlative provisions of the Pennsylvania anthracite regulatory program in effect on August 3, 1977 are: the environmental protection performance standards of Section 515, 30 U.S.C. § 1265, the standards directed to the surface effects of underground coal mining operations, Section 516, 30 U.S.C. § 1266, the performance bond limits of Section 509, 30 U.S.C. § 1259, and the period of revegetation responsibility of Section 519, 30 U.S.C. § 1269.

All other provisions of the federal Act are applicable to and binding on the states.[2] States desiring to maintain

---

**2.** Among the remaining provisions of the federal Act apparently binding on the anthracite industry, along with the federal regulations related thereto, are: Permit requirements (Section 506, 30 U.S.C. § 1256), application requirements (Section 507, 30 U.S.C. § 1257), reclamation plan requirements (Section 508, 30 U.S.C. § 1258), and

primary jurisdiction over the enforcement of the requirements, as opposed to federal jurisdiction over enforcement, were to prepare and submit, for the approval by the United States Office of Surface Mining, the state regulatory program intended to be enforced by the state. Section 503(a), 30 U.S.C. § 1253(a). Compliance with the federal program would result in approval of application for the reposal in the state of primary jurisdiction for enforcement, Section 503(b), 30 U.S.C.A. § 1253(b), and until the state obtains approval of its program, amended to meet those non-superseded federal provisions, enforcement of the Act remains in the federal Office of Surface Mining, Section 504(a), 30 U.S.C. § 1254(a).

Against this background, in 1980 the General Assembly of the Commonwealth of Pennsylvania amended four acts governing the environmental law [3] as it relates to the mining industry within the Commonwealth, including the state

performance bond requirements for those operations (Section 509, 30 U.S.C. § 1259). The Act also establishes criteria and procedures for permit approval or denial (Section 510, 30 U.S.C. § 1260), permit revisions (Section 511, 30 U.S.C. § 1261), public notice and public hearings on permit applications (Section 513, 30 U.S.C. § 1263), and decisions on permit applications by state regulatory authorities as well as appeals from such decisions (Section 514, 30 U.S.C. § 1264). The Act contains provisions for inspections and monitoring (Section 517, 30 U.S.C. § 1267), civil and criminal penalties (Section 518, 30 U.S.C. § 1268), release of performance bonds (Section 519, 30 U.S.C. § 1269), citizen suits (Section 520, 30 U.S.C. § 1270), enforcement (Section 521, 30 U.S.C. § 1271), and administrative and judicial review (Section 525 and 526, 30 U.S.C. §§ 1275–76). The Act also establishes criteria and procedures for designation of areas as unsuitable for mining, (Section 522, 30 U.S.C. § 1272).

3. The environmental law of this Commonwealth is administratively regulated by three separate bodies. The Environmental Quality Board has as its primary purpose and power to formulate, adopt and promulgate rules and regulations which become the rules and regulations of the Department of Environmental Resources, 71 P.S. § 510–20(b), which then has the duty of enforcing the regulations. The third body, the Environmental Hearing Board is empowered to review orders, permits, licenses and decisions of the Department of Environmental Resources in its enforcement role. 71 P.S. § 510–21(a).

Surface Mining Conservation and Reclamation Act, *supra.*[4] While the federal Act, by Section 505(b), 30 U.S.C. § 1255(b), permits the state regulatory authority to make more stringent the state law in effect on August 3, 1977, the General Assembly of this Commonwealth enacted a limitation on the power of the Environmental Quality Board to amend the Pennsylvania regulatory program of the anthracite industry in existence on August 3, 1977. The 1980 amendment to the Surface Mining Conservation and Reclamation Act, *supra,* 52 P.S. § 1396.1 *et seq.,* provides, *inter alia:*

> *Section 16.  To the full extent provided by section 529 of the Surface Mining Control and Reclamation Act of 1977 (Public Law 95–87) [30 U.S.C.A. § 1279], the surface mining of anthracite shall continue to be governed by the Pennsylvania law in effect on August 3, 1977.* Section 17.

\*      \*      \*      \*      \*      \*

*It is hereby determined that it is in the public interest for Pennsylvania to secure primary jurisdiction ...,* and that the *General Assembly* should amend this act in order to obtain approval of the Pennsylvania program by the United States Department of the Interior. *It is the intent of this act to preserve existing Pennsylvania law to the maximum extent possible.*

Act of October 10, 1980, P.L. 835, No. 155, §§ 16 and 17, 52 P.S. § 1396.1, historical note (Supp.1983).

**4.** The other three acts amended in 1980 are: The Bituminous Mine Subsidence and Land Conservation Act of 1966, Act of April 27, 1966 P.L. 31, No. 1, 52 P.S. § 1406.1 *et seq.,* The Clean Streams Law, Act of June 22, 1937, P.L. 1987, No. 394, as amended, 35 P.S. § 691.1 *et seq.,* and the Coal Refuse Disposal Control Act, Act of September 24, 1968, P.L. 1040, No. 318, as amended, 52 P.S. § 30.51 *et seq.* These acts were amended identically to the Surface Mining Conservation and Reclamation Act insofar as the restatement of the legislative goal of obtaining primary jurisdiction over regulation of coal operations in the state with provision for legislative oversight over the promulgation by the Environmental Quality Board of regulations necessary solely to obtain primary jurisdiction.

The clear intent of this enactment is to maintain the law in effect regulating anthracite mining on August 3, 1977 relating to the four areas in which state anthracite regulation supersedes the federal law, Section 529(a) of the federal Act, supra, 30 U.S.C. § 1279(a), but to permit revision to meet the remaining federal provisions binding on the states thus accommodating the concurrent goal of securing primary jurisdiction over regulation of anthracite mining in Pennsylvania.[5] Accordingly, the General Assembly provided for power in the Environmental Quality Board to enact, on an emergency basis, regulations necessary to secure primary jurisdiction:

> Section 15. In order to maintain primary jurisdiction over surface coal mining in Pennsylvania pursuant to the [federal Act], the Environmental Quality Board shall have the authority to adopt *initial regulations on an emergency basis* .... Provided, however, within 30 days after ... [securing] primary jurisdiction ..., the Environmental Quality Board shall repropose the regulations adopted on an emergency basis, shall submit the regulations to the Senate Environmental Resources and House Mines and Energy Management Committees of the General Assembly for their review and comments, and shall schedule public hearings within 90 days after such grant of primary jurisdiction for the purpose of hearing public comment on any appropriate revisions.

> At least 30 days prior to consideration by the Environmental Quality Board of any revised regulations or any new regulations under this act *other than those initial regulations promulgated on an emergency basis [i.e. necessary to secure primary jurisdiction]*, the depart-

5. In addition, the General Assembly enacted a saving clause providing that in the event of any federal court action invalidating all or part of the federal Act, the corresponding provision of the Pennsylvania program enacted to secure primary jurisdiction is invalid and the pre-existing state of the law is to be enforced. Act of October 10, 1980, P.L. 835, Act 155, § 17, 52 P.S. § 1396.1, historical note, section 17. Thus, the intent of the legislature to oversee regulation affecting the anthracite industry and to maintain the status quo of August 3, 1977 is clear.

ment shall submit such regulation to the Senate Environmental Resources and House Mines and Energy Management Committees of the General Assembly for their review and comment.

Act of October 10, 1980, P.L. 835, No. 155, § 15, 52 P.S. § 1396.1, historical note. The Environmental Quality Board is, therefore, to enact what is necessary to obtain primary jurisdiction, subject to *subsequent* legislative oversight 30 days following approval of the program by the Secretary of the Interior; regulations not required for primary jurisdiction are subject to *preliminary* legislative oversight by the requirement that such proposed regulations be first submitted to the appropriate committees of the General Assembly. This is a clear limitation of the general power of the Environmental Quality Board to formulate, adopt and promulgate such rules and regulations as it may determine are required for the proper performance of the work of the Department of Environmental Resources set forth in Section 1920–A(b) of the Administrative Code of 1929, Act of April 9, 1929, 71 P.S. § 510–20(b).

The issue underlying Appellants' petition for injunctive relief therefore raises the question of whether the Environmental Quality Board in promulgating the comprehensive regulations appearing in Chapters 86 and 88 of the Pennsylvania Code, *supra*, applicable to the anthracite industry, has exceeded this limitation.

The immediate question presented to this Court, however, is whether a court of equity may properly exercise its jurisdiction to resolve the instant pre-enforcement challenge to the validity of a regulatory scheme grounded in a claim that the regulations were promulgated in excess of the statutory authority by which the regulatory agency is empowered to enact such regulations.

The pre-enforcement relief sought by Appellants is clearly preserved as a remedy by the Administrative Agency Law. The scope of judicial review in agency matters is established by Section 703 of the Administrative Agency

Law, Chapter 7, Subchapter A, Act of April 28, 1978, P.L. 202, No. 53:

§ 703  Scope of review

(a) General rule.—A party who proceeded before a Commonwealth agency under the terms of a particular statute *shall not be precluded from questioning the validity of the statute in the appeal,* but such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

(b) *Equitable relief.—The remedy at law provided by subsection (a) shall not in any manner impair the right to equitable relief heretofore existing, and such right to equitable relief is hereby continued notwithstanding the provisions of subsection (a).*

2 Pa.C.S.A. § 703 (emphasis supplied).  Prior to the new codification of Purdon's Statutes, this provision appeared at 71 P.S. § 1710.42, the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, § 42, *as amended,* repealed by Act of April 28, 1978, P.L. 202, No. 53, § 2(a).  The equitable relief available at the time of its original enactment which subsection (b) preserves is set forth in *Western Pennsylvania Hospital v. Lichliter,* 340 Pa. 382, 291–393, 17 A.2d 206, 211–212 (1941), in which this Court affirmed *per curiam* on the .opinion below of the court of common pleas citing the established remedy in equity to prevent the enforcement of a regulation if the regulatory body has exceeded its authority and enjoining an administrative agency from exercising powers not conferred upon it or unconstitutionally conferred.

More recent cases invoking the power of equity have arisen within the original jurisdiction of the Commonwealth Court.  See, e.g., *Hospital Association v. Bachman,* 40 Pa. Commonwealth Ct. 262, 397 A.2d 65 (1979), *affirmed sub nom, Hospital Association of Pennsylvania v. MacLeod,* 487 Pa. 516, 410 A.2d 731 (1980); *Pennsylvania Association of Life Underwriters v. Comm., Department of In-*

*surance,* 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977) *affirmed* 482 Pa. 330, 393 A.2d 1131 (1978).

■ Thus, the propriety of invoking the original equitable jurisdiction of the Commonwealth Court in a case seeking preenforcement review of a substantial challenge to the validity of regulations promulgated by an administrative agency is clear. A court of equity, however, must refrain from exercising its jurisdiction when there exists an adequate statutory remedy. *Comm., Dept. of Public Welfare v. Eisenberg,* 499 Pa. 530, 454 A.2d 513 (1982); *Canonsburg General Hosp. v. Dept. of Health,* 492 Pa. 68, 422 A.2d 141 (1980).

■ The statutory remedy prescribed by the state Surface Mining Conservation and Reclamation Act, *supra,* 52 P.S. § 1396.4, subsection (b), contemplates resort to the Environmental Hearing Board upon Department *action,* which is reflected in Section 1921–A of the Administrative Code of 1929, *supra,* 71 P.S. § 510–21:

> (a) The Environmental Hearing Board shall have the power and its duties shall be to hold hearings and issue adjudications under the ... "Administrative Agency Law," on any *order, permit, license or decision of the Department of Environmental Resources.*
>
> *   *   *   *   *   *
>
> (c) Anything in any law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the [Department] adversely affecting any person shall be final as to such person until such person has had the opportunity to *appeal such action to the Environmental Hearing Board;* provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified.

71 P.S. §§ 510–21(a) and (c) (emphasis supplied). Pre-enforcement review, however, is clearly not within the authority of the Environmental Hearing Board and any suggestion

to the contrary can only be founded upon a strained and unrealistic construction of the language of the Code. There appears no reference to power in the hearing board to rule on the validity of regulations promulgated and adopted by the Environmental Quality Board in advance of the enforcement and application of the regulations to the litigants; it is only within the context of an appeal from Department of Environmental Resources action upon the application of the allegedly illegal regulation, contemplated by Section 703(a) of the Administrative Agency Law, *supra,* 2 Pa.C.S.A. § 703(a), that the Board enjoys an ancillary power to rule on the validity of regulations, *U.S. Steel Corp. v. Comm., Dept. of Environmental Resources,* 65 Pa. Commonwealth Ct. 103, 442 A.2d 7 (1982); *St. Joe Minerals Corp. v. Goddard,* 14 Pa. Commonwealth Ct. 624, 324 A.2d 800 (1974).

The Commonwealth Court held that this opportunity for review upon piecemeal application and enforcement of the challenged regulations is an adequate remedy.[6] We disagree.

■ Where the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) *modified on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Gardner v. Toilet Goods Assoc.,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); *contra Toilet Goods Assoc. v. Gard-*

6. It appears that the order by Commonwealth Court dismissing the petition issues from a recognition of the complex and technical nature of the underlying questions involved, and is therefore in deference to the oft-recognized ability of the Environmental Hearing Board to address and establish a full record on the technical aspects of environmental regulatory law. Nonetheless, the technical aspects of the case should not be the dispositive factor controlling the question of equitable relief; courts of this Commonwealth daily resolve medical malpractice and products liability disputes, as merely two examples of many, which involve highly technical and complex subject matter. Concerns apart from complexity of the issues involved govern this case.

*ner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) (impact not immediate and direct where regulation is not self-executing and thus does not affect primary conduct of the enterprise).

■ We believe that the asserted impact of the regulations in the instant case is sufficiently direct and immediate to render the issue appropriate for judicial review; the lengthy process by which the validity of the regulations will be addressed on a basis of application to the litigant would result in ongoing uncertainty in the day to day business operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval.

Appellants may refuse to comply and test the regulations by appealing, for example, a denial of permit to operate, or a denial of bond release, or by defending actions imposing sanctions for non-compliance. 52 P.S. § 1396.4(b). This proposed avenue of review is beset with penalties and impediments to the operation of the anthracite industry rendering it inadequate as a satisfactory alternative to the equitable action initiated under the original jurisdiction of Commonwealth Court.

The alternative to challenging the regulation through noncompliance is to submit to the regulations. We cannot say that the burden of such a course is other than substantial, accepting, as we must on a motion to dismiss on the pleadings, the allegations of the complaint as true. Appellants have alleged that the regulations require the expenditure of substantial sums to comply which, while not immediately calculable, will substantially impair the cash flow of all Appellants. Whether or not this allegation is true, it is clear that if Appellants elect to comply and await judicial determination of validity in subsequent piecemeal litigation, the process would be costly and inefficient.

The Department urges that the threat of enforcement proceedings for non-compliance with a judicially untested regulation is unrealistic for the power of the Department to be flexible in applying the regulations and its power to

waive certain requirements lessens the likelihood of enforcement. We, of course, cannot accept this argument as mere representation by the Department that it will ultimately be flexible and exercise its waiver power can not defeat Appellants' assertion of immediate hardship.

Accordingly, in view of the inadequacy of the available means by which Appellants' claim of invalidity of the regulations promulgated by the Environmental Quality Board will be addressed within the statutory administrative review provisions of the Administrative Code, we hold that the Commonwealth Court erred in declining to exercise its equitable jurisdiction by dismissing Appellants' petition.

Reversed and Remanded.[7]

7. The Department, in its motion for an expedited hearing on its preliminary objections, asserted that in order to conduct a proper hearing on the Appellants' petition, the court would have to inspect each and every one of the challenged regulations, approximately 100 pages in length. For each section or subsection, the court would have to ask first whether there exists a requirement for that regulation in the federal Act. The court would then have to ask whether there exists a requirement for that regulation in the federal regulations. If the court finds no federal counterpart for the state regulations in question, the court would then have to inquire as to the Pennsylvania law in existence on August 3, 1977. As 30 C.F.R. Part 820 (which contains the general federal regulations concerning anthracite) allegedly indicates, the court would have to look at the requirements of at least thirteen (13) state statutes and at least 33 chapters of Department regulations, all of which existed on August 3, 1977, and regulated anthracite mining activities in some way. If there was no ascertainable 1977 requirement for the state regulation in question, and no federal requirement for that regulation, the court would then have to decide whether to void that regulation.

This scenario assumes that the method by which the existing 1977 state of the law was completely recodified was validly accomplished. There thus may arise the question, a purely legal one, whether the *emergency* changes contemplated by the legislature were to have been accomplished within the existing framework of regulations, with amendments and deletion as necessitated to meet federal requirements and not by comprehensive recodification. It was apparently in pursuit of this argument that Appellants presented a side-by-side comparison of the August 3, 1977 regulations and the recodified 1982 regulations, without inquiry to requirements imposed by other enactments. The question, however, is one which is resoluble on the basis of legal construction of the legislative language of the 1980 amendments.

ZAPPALA, J., files a dissenting opinion.

NIX, C.J., and McDERMOTT, J., do not participate in the consideration or decision of this case.

ZAPPALA, Justice, dissenting.

I dissent. The Appellant's basic claim is that the challenged regulations differ from regulations in effect when the federal Surface Mining Control and Reclamation Act of 1977, Pub.L. 95–87, Title I, § 101, 91 Stat. 447, 30 U.S.C. § 1201 *et seq.* (SMCRA) went into effect. Because the Pennsylvania Surface Mining Conservation and Reclamation Act, as amended by the Act of October 10, 1980, P.L. 835, No. 155, 52 P.S. § 1396.1 *et seq.,* requires that anthracite mining be governed to the maximum extent possible by the law existing at the time the federal act went into effect, the Appellants argue that the challenged regulations are invalid.

The SMCRA establishes as a matter of federal law, regulations applicable to mining, including anthracite mining, except as provided in Section 529. That section allows the option of state regulation, as distinct from state enforcement, in only four areas—environmental protection performance standards, standards for surface effects of underground mining, performance bond limits, and periods of revegetation. In all other areas the federal regulations apply. Section 529 reads

> (a) The Secretary is hereby authorized to and shall issue separate regulations according to time schedules established in the Act for anthracite coal surface mines, if such mines are regulated by environmental protection standards of the State in which they are located. Such alternative *regulations shall adopt, in each instance,*

Assuming that the question posed above is resolved in the negative, then the scenario presented by the Department becomes relevant. We fully recognize the complexity of the task, but caution that extensive pre-hearing stipulation between the parties as to the propriety of certain regulations required by other provisions of either federal or state statutes and regulations or acts applicable on August 3, 1977, will be required to focus the review.

*the environmental protection provisions of the State regulatory program in existence at the date of enactment of this Act in lieu of sections 515 and 516. Provisions of sections 509 and 419 are applicable except for specified bond limits and period of revegetation* responsibility. *All other provisions of this Act apply* and the regulation issued by the Secretary of Interior for each State anthracite regulatory program shall so reflect: Provided, however, That upon amendment of a State's regulatory program for anthracite mining or regulations thereunder in force in lieu of the above-cited sections of this Act, the Secretary shall issue such additional regulations as necessary to meet the purposes of this Act. 30 U.S.C. § 1279 (emphasis added).

The Appellee, Department of Environmental Resources, argues that the program of regulations challenged here was developed in conjunction with the Office of Surface Mining of the Department of the Interior in order to assure that Pennsylvania's regulations were sufficient under the SMCRA and ten other federal acts which govern the field.

It is not clear from the face of the regulations that they change Pennsylvania law from what it was in August of 1977. Nor is it clear whether, if they do change the law, that such change was unnecessary under those parts of SMCRA which apply to the state, or under any other federal law. Neither do the Appellants give any specific reasoning in support of a conclusion that particular regulations are invalid for any of these reasons. The Appellants present only a generalized attack on the entire regulatory program, alleging merely that it differs from the former regulations.

Granted that to the extent any particular regulation might exceed the statutory authorization it would be invalid, under these circumstances I think it is unwise as a matter of judicial policy to allow the Appellants to proceed on a bare assertion that the program *as a whole* is invalid. The Appellants should present specific reasons as to each regulation, demonstrating why it is invalid, to the Environ-

mental Hearing Board whose function it is to review Department action based on regulations as applied to specific cases. I would affirm the Opinion and Order of the Commonwealth Court so holding.