392 A.2d 1319

PENNSYLVANIA BANKERS ASSOCIATION, Allegheny Valley Bank of Pittsburgh, Bucks County Bank and Trust Company, Century National Bank and Trust Company and the Dale National Bank, Appellants,

v.

SECRETARY OF BANKING, and Philadelphia Saving Fund Society, Appellees.

Supreme Court of Pennsylvania.

Argued April 17, 1978.

Decided Oct. 5, 1978.

Dechert, Price & Rhoads, John J. Brennan, Gordon W. Gerber, Philadelphia, for appellants.

Drinker, Biddle & Reath, Robert S. Ryan, Edward M. Posner, Philadelphia, for appellee, P. S. F. S.

Vincent X. Yakowicz, Sol. Gen., Harrisburg, for appellee, Secretary of Banking.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

In this case of first impression in Pennsylvania, we must decide whether the Department of Banking exceeded its rule-making authority in promulgating a regulation which allows mutual savings banks to offer depositors a noninterest bearing account from which money can be withdrawn by means of a negotiable order of withdrawal payable to a named third party. The relevant factual background, in no way disputed, is as follows.

Some time before December 27, 1976, the Secretary of Banking sought the legal opinion of the Attorney General of Pennsylvania as to whether savings banks operating under the Banking Code of 1965, *as amended,* 7 P.S. §§ 101–2202 (1967 & Supp.1978–79), could offer these notice of withdrawal (NOW) accounts to their depositors. Under the terms of a typical NOW account, money may be withdrawn by means of a negotiable order of withdrawal which requires the bank to pay the specified sum to a named third party. These sight drafts are "payable through" drafts, naming a commercial bank at which the draft can be presented for payment. The drafts then clear through the banking system much the same as other drafts. The similarity of a NOW draft to the traditional check, at least from a functional viewpoint, is self-apparent.

After a review of the pertinent Banking Code sections, including those delineating the Department's regulatory and

rule-making authority, the Attorney General advised the Secretary that it was the view of the attorney general's office that the Banking Code empowered the Department to allow NOW accounts, if done by proper regulation. Official Opinion No. 76–33, 7 Pa.Bull. 172, *reprinted* in 1 Pa.D. & C.3d 123 (1977). The Attorney General did add the caveat that because of § 503(a) of the Code, any such regulation must require each NOW account draft to contain language which indicates that the bank may require 14 days notice before making payment.

On January 15, 1977, the Department of Banking publish-ed notice of proposed rule-making in the Pennsylvania Bulle-tin. The Department invited interested parties to submit comments, in response to which comments were received both in favor of, and in opposition to, a regulation permit-ting savings banks to offer NOW accounts. The Pennsylva-nia Bankers Association, one of the appellants in this case, submitted comments in opposition to such a regulation. On March 12, the Department of Banking adopted regulations allowing savings Banks to offer NOW accounts, provided each draft bore the legend reserving to the bank the right to require 14 days notice before paying NOW drafts. *See* 7 Pa.Bulletin 699 (March 12, 1977).

On March 14, 1977, appellants, the Pennsylvania Bankers Association and four commercial banks, filed a petition for review in the Commonwealth Court challenging the validity of the regulations. Appellants also sought to stay the effective date of the regulations. Appellee, Philadelphia Savings Fund Society (PSFS), a mutual savings bank, was permitted to intervene. After a hearing before Judge Blatt, appellants' application for a stay was denied.

Appellants then filed in the same court a motion for summary judgment. Appellees PSFS and the Secretary of Banking filed cross-motions for summary judgment. A unanimous Commonwealth Court granted appellees' cross-motions for summary judgment and denied appellants' mo-tion. *Pennsylvania Bankers Association v. Commonwealth, Secretary of Banking,* 32 Pa.Cmwlth. 439, 379 A.2d 1062

(1977). Appellants filed a notice of appeal in this Court and appellee PSFS countered with a motion to quash. We denied the motion to quash and treated the notice of appeal as a petition for allowance of appeal. The Appellate Court Jurisdiction Act of 1970, § 204, 17 P.S. § 211.204(b) (Supp. 1977–78). Such petition was granted and this appeal followed. *See* 17 P.S. § 211.204(a). We now affirm.

All parties agree that the Banking Code of 1965 does not expressly prohibit savings banks from offering NOW accounts. Neither do the parties dispute that NOW accounts are but one method of withdrawing deposits from a savings account. And all agree that the Banking Code places few restrictions on savings banks insofar as the withdrawal of deposits is concerned, leaving it to the individual savings banks to provide for the terms of withdrawal in their articles or by-laws "except that deposits may not be accepted which are legally subject to withdrawal within a period of less than fourteen days." 7 P.S. § 503(a). (Section 503(b) provides that absent such an article or by-law, savings banks can require 60 days notice before permitting withdrawals). Finally, there is no dispute, as indeed there could not be, that the area of savings bank withdrawals is one presumptively within the ambit of the Department's "rule-making power and administrative discretion" expressly delegated it by the Banking Code. 7 P.S. § 103(a)(viii).

Appellants claim that the Department exceeded its statutory authority in promulgating regulations which allow NOW accounts. Appellants argue that savings banks have a defined role under the Banking Code, namely to hold savings deposits; that the authority to hold savings deposits does not include the authority to offer NOW accounts which, according to appellants, "are checking accounts or the equivalent of checking accounts;" and that to permit savings banks to offer this service would distort the Banking Code's purpose of creating savings banks to function solely as savings institutions. Appellants thus glean from the Banking Code a legislative intent to deny savings banks the power to offer NOW accounts, and from that conclusion

argue that there is no basis for the exercise of administrative rule-making on the subject.

We believe that neither the language nor the spirit of the Banking Code sustains the construction sought to be given it by appellants. Moreover, well settled and jurisprudentially sound principles of administrative law, principles that delineate our function as an appellate court reviewing administrative action, counsel us to reject appellants' argument that the Banking Code forbids the Secretary from administratively sanctioning NOW accounts.

The Banking Code delegates to the Department of Banking

> "adequate rule-making power and administrative discretion, subject to the provisions of this act and to the purposes stated in this subsection (a), in order that the supervision and regulation of institutions subject to this act may be flexible and readily responsive to changes in economic conditions and to changes in banking and fiduciary practices." 7 P.S. § 103(a)(viii).

Section 103(a)(viii) thus makes it clear that the Department, in exercising its rule-making power to permit NOW accounts, did not exceed its delegated authority unless permitting such accounts (1) contravenes some provision of the Banking Code, or (2) derogates from the purposes of the Code as set forth in subsection (a) of section 103.

First, we are satisfied that NOW accounts contravene no section of the Banking Code. As previously noted, only § 503 of the Code speaks to withdrawals of funds from savings banks, and nothing in that section prohibits withdrawals by means of a negotiable sight draft presented by a third party, provided that payment cannot be demanded on less than 14 days notice. Appellants argue, however, that NOW drafts are checks, both functionally and legally, and that savings banks cannot offer checking services under the Code's provision. We agree with the Commonwealth Court that the legend on NOW drafts giving savings banks the option to require 14 days notice before making payment significantly and sufficiently distinguishes NOW drafts from

the traditional check. There is no requirement that savings banks actually exercise this right to take 14 days to pay a draft, and whether or not they ordinarily do so, such an instrument is obviously not "payable on demand" and hence not a check within the Uniform Commercial Code definition. *See* 12A P.S. § 3–104(2)(b) (1970). Appellants claim, however, that savings banks such as appellee PSFS have advertised that NOW drafts "work just like checks." Legally these instruments are not checks, and savings banks' advertising campaigns are not relevant to appellant's challenge under the Banking and Uniform Commercial Codes.

Having determined that the challenged regulations do not violate any specific Code provisions, we turn our attention to the purposes of the Banking Code to ascertain whether the Department's regulations sanctioning NOW accounts runs afoul of those purposes. Our examination of the Code's avowed purposes leads to precisely the opposite conclusion.

To guide the Department of Banking in the exercise of its rule-making powers, the legislature expressly set forth its intent in enacting the Banking Code. The Code was to provide for:

"(v) The opportunity for institutions subject to this act to remain competitive with each other, with financial organizations existing under other laws of this Commonwealth, and with banking and financial organizations existing under the laws of other states, the United States and foreign countries,

(vi) The opportunity for institutions subject to this act to serve effectively the convenience and needs of their depositors, borrowers and other customers, to participate in and promote the economic progress of Pennsylvania and the United States and to improve and expand their services and facilities for those purposes,

(vii) The opportunity for the management of institutions to exercise their business judgment, subject to the provisions of this act, in conducting the affairs of their institutions, to the extent compatible with, and subject to, the purposes recited in the preceding clauses of this subsection (a),

(viii) A delegation to the department of adequate rule-making power and administrative discretion, subject to the provisions of this act and to the purposes stated in this sub-section (a), in order that the supervision and regulation of institutions subject to this act may be flexible and readily responsive to changes in economic conditions and to changes in banking and fiduciary practices, and

(ix) Simplification and modernization of the law governing banking and governing the exercise of fiduciary and other representative powers by corporations." 7 P.S. § 103

These provisions are the "standards to be observed by the department in the exercise of its discretionary powers under this act." *Id.* § 103(b). The official comments to § 103, which "may be consulted in the construction and application" of the Code, *id.* § 104(a), elaborate:

"Clauses (v) through (ix) of subsection (a) recognize that after satisfying the imperatives of safety and soundness there still remains a broad area in which the policies for banking legislation and regulation may create a progressive rather than restrictive atmosphere. The premises underlying such policies recognized by this act are that contemporary banking faces, and should have the opportunity fairly to meet, a high degree of competition not only from other banks but also, in virtually all principal functions, from a large number and variety of other financial organizations; that banking should have the leeway to adapt itself to changing and expanding requirements of the community in order that it may make its proper contribution to economic progress; that, within the confines of appropriate restrictions to protect depositors and the public, the private business judgment of management should be free to guide the development of banking institutions; and that banking legislation should not be overly-detailed but should permit supervisory authorities to shape regulation, within statutory standards and guidelines, in order to meet changes in banking and economic conditions without repeated, detailed legislative amendment."

The reason savings banks seek to offer their depositors NOW accounts is self-evident. It is an effort to provide customers with a convenient, efficient means of satisfying financial obligations by means of a savings account, while foregoing the need to personally go to the bank and present a passbook in order to withdraw funds. Appellants have never claimed that NOW accounts will not constitute a true convenience to savings bank customers. The Department's express mandate under the Code is to promulgate rules with an eye to providing "[t]he opportunity for institutions subject to [the Banking Code] to serve effectively the convenience and needs of their depositors;" to give a savings bank "the leeway to adapt itself to changing and expanding requirements of the community;" and, to leave room "for the management of institutions to exercise their business judgment . . . in conducting the affairs of their institutions."

Regulations which sanction NOW accounts as one method of withdrawing deposits are obviously in accord with these purposes. This service is but one of many which both commercial and savings banks have instituted in recent years in an effort to better serve their customers. Such innovations as telephone banking, withdrawal by mail, and computerized, 24-hour banking are just a few. Like NOW accounts, these services are a departure from traditional banking practices in Pennsylvania. Indeed, it is manifest from § 103 that such departures were not only foreseen but encouraged by the Banking Code and by the legislator's desire to create a "progressive rather than restrictive atmosphere" in the banking industry. Permitting NOW accounts can only further that statutory goal.

Appellants also argue that permitting savings banks to offer NOW accounts gives those banks an unjustified competitive edge over commercial banks, and will cause a shift of deposits to savings banks. Therefore, according to appellants, only the legislature can act to permit NOW accounts. What appellants overlook is that these considerations are precisely the reason the Department of Banking

was created, and invested with rule-making powers and administrative discretion. *See, e. g.,* 7 P.S. §§ 103(a)(v), 103(a)(viii). The arguments now made before this Court were raised before the Department when it invited comments on the proposed regulations to allow NOW accounts. An appellate court should defer to the administrative agency to determine such things as the effect differing banking practices will have on competition between commercial and savings banks; whether a particular service would constitute a competitive advantage and, if so, whether such an advantage is warranted or desirable; whether a shift in deposits would indeed occur and, if so, whether such a shift would have deleterious effects on banking in general; the impact of NOW accounts in light of other banking regulations which give some banks advantages over others; and similar complex questions regarding the banking industry. The Department of Banking, as an administrative agency with experience and expertise in dealing with the business of banking, is far better suited to weigh and properly resolve these matters than is this Court.

█ This considerable gap in experience and expertise between the administrative agency assigned the task of regulating an industry, and an appellate court which reviews that agency's action is the reason for our narrow standard of review when examining an agency's exercise of its legislative rule-making authority. As this Court stated in *Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 77, 313 A.2d 156, 169 (1973):

"A court, in reviewing such a regulation, 'is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action . . . involved, it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse. What has been ordered must appear to be "so entirely at odds with fundamental principles . . . as to be the expression

of a whim rather than an exercise of judgment." ' *American Telephone & Telegraph Co. v. United States,* 299 U.S. 232, 236–237, 57 S.Ct. 170, 172, 81 L.Ed. 142 (1936)."

*See also Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 572–74, 109 A.2d 331, 334–35 (1954), *cert. denied,* 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955). Accord, *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); 1 K. C. Davis, Administrative Law Treatise § 5.03 (1958). We have no hesitation in concluding that under this standard of review, the challenged regulation must be sustained. The Secretary's decision to permit NOW accounts was a considered exercise of judgment, arrived at after weighing arguments both in opposition to, and in favor of, permitting such accounts. Regulations which go to a method of withdrawing funds from a savings bank are easily within the bounds of the Department's rule-making power; whether or not it was unwise to permit this method of withdrawal is of no concern to this Court.

Of course, the Secretary's statutory authority to prescribe standards for the banking institutions it regulates is not unlimited. When regulations go beyond the purpose of a statute, or bear no rational relationship to that purpose, a court may set them aside. *E. g., Batterton v. Francis, supra,* 432 U.S. at 428–29, 97 S.Ct. at 2407, 53 L.Ed.2d at 458; *Espinoza v. Farah Manufacturing Co.,* 414 U.S. 86, 94, 94 S.Ct. 334, 339, 38 L.Ed.2d 287, 294–95 (1973). Nothing undertaken by the Secretary of Banking in this case approaches those limitations, however, and we simply cannot say the Secretary acted ultra vires in promulgating these regulations.

In sum, we agree with the attorney general that a review of the Banking Code of 1965 unmistakably leads to the conclusion that the Secretary of Banking has the legislative authority and rule-making power to permit NOW accounts when done so by appropriate regulation.

The order of the Commonwealth Court is affirmed.