528 A.2d 114

BROCAL CORP. t/d/b/a Alert Transportation Company, Care & Emergency, Inc.; Medi-Call Ambulance Service, Inc. t/d/b/a Medi-Call Paratransit and t/d/b/a Keystone Transportation Services; Medical Carriers, Inc.; O'Steen Transportation Corp.; and Professional Paramedical Services, Inc., Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, and Hon. Dick Thornburgh, Governor, Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 29, 1987.

Decided June 12, 1987.

Reargument Denied Oct. 14, 1987.

226

Gerald Gornish, Richard L. Berkman, John J. Gallagher, Philadelphia, Raymond A. Thistle, Jr., Jenkintown, Michael A. Tier, Philadelphia, for appellants.

Allen C. Warshaw, Kate L. Mershimer, Deputy Atty. Gen., Harrisburg, Alan Kahn, Philadelphia, William Alvah Stewart, Pittsburgh, Niles Schore, Clearfield, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

HUTCHINSON, Justice.

This case deals with appellee's, Commonwealth of Pennsylvania, Department of Transportation's (PennDOT's), promulgation of new regulations, 67 Pa.Code §§ 425.1–425.15, governing reimbursement of transit companies which provide "shared ride" transportation to senior citizens under the Pennsylvania Urban Mass Transportation Law (Transportation Law), Act of January 22, 1968, P.L. 42, *as amended*, 55 P.S. §§ 600.101–600.407 (Supp.1986). Appellants appeal as of right an order entered in an action for a declaratory judgment, a permanent injunction and damages com-

menced in Commonwealth Court. 42 Pa.C.S. § 723(a) (Supp.1986); Pa.R.A.P. 1101(a).[1] That Court, exercising its original jurisdiction, partially granted PennDOT's motion for judgment on the pleadings.

Appellants claim that PennDOT violated the notice provisions of sections 201 and 202 of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, §§ 201, 202, *as amended*, 45 P.S. §§ 1201–02 (Supp.1986). They also claim that the regulations were not promulgated in accordance with the provisions of the Regulatory Review Act (Review Act), Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1–745.14 (Supp.1986) (expired December 31, 1985), and that they are substantively unreasonable.

Though the terms of the regulations finally promulgated are different than the regulations originally proposed, we do not believe that PennDOT violated the notice provisions of the Commonwealth Documents Law. Further notice was not required because the final regulations did not enlarge the "original purpose" of the proposed regulations. The record shows that the regulations were properly submitted to, reviewed and approved by the Independent Regulatory Review Commission (Commission). Thus, we believe that the Review Act was not violated. Finally, appellants have not shown that PennDOT abused its discretion or exceeded its authority in promulgating the regulations. The order of Commonwealth Court is affirmed.

Appellants are private common carriers and have been granted certificates of public convenience by the Public Utility Commission (PUC). They operate in Philadelphia

1. We note that this case was properly brought under Commonwealth Court's original jurisdiction. Subject to five enumerated exceptions, which are not relevant here, Commonwealth Court has original jurisdiction over all civil actions "[a]gainst the Commonwealth government." 42 Pa.C.S. § 761(a)(1) (Supp.1986). We have held that a pre-enforcement challenge to regulations promulgated by a Commonwealth agency is within Commonwealth Court's original jurisdiction if there is no adequate remedy at law. *Arsenal Coal Co. v. Dept. of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984). We are satisfied that appellants had no adequate remedy at law. Thus, it is properly here on direct appeal.

and surrounding counties. They contracted to provide "shared ride"[2] transportation to senior citizens under section 203(5)(iii) of the Transportation Law, *supra,* 55 P.S. § 600.203(5)(iii).[3] The participating carriers' expenses are subsidized from lottery funds. *Id.* at § 203(5), 55 P.S. § 600.203(5). PennDOT is statutorily empowered to administer the program. *Id.* at § 203(5)(v), 55 P.S. § 600.-203(5)(v). Prior to the regulations, PennDOT compensated the carriers at a rate of 90% of their PUC approved tariff, and there was no ceiling on this reimbursement. 15 Pa. Bull. 3944–45 (1985). In April, 1985, PennDOT sent letters to appellants and other carriers participating in the "shared ride" program. The letter informed them that they would have to reduce fares by 20% to continue participating in the program. It directed the carriers to execute amendments to their existing agreements to that effect. Appellants filed a Petition for Review in Commonwealth Court. The court entered a temporary restraining order in May, 1985. In July, 1985, PennDOT submitted new contracts for the upcoming year to appellants and other participating carriers. In an amended Petition for Review, appellants complained that the agreements relied on new regulations as to which PennDOT had bypassed the statutory procedures for promulgating regulations. The parties agreed that the contracts would be administered consistent with prior practice until new regulations were finally promulgated.

2. **"Shared ride public transportation services"** shall include demand responsive transportation that is available to the general public, operates on a nonfixed route basis and charges a fare to all riders. For transportation to be included in this definition the first fare paying passengers to enter the public transportation vehicle must not refuse to share the vehicle with other passengers during a given trip.
Transportation Law, *supra* at § 202, 55 P.S. § 600.202.

3. (iii) Reduced fare services on local common carrier mass transportation systems to persons sixty-five years of age or older when such passage is on shared ride public or contract transportation services during regular hours of operation. On shared public transportation, losses are reimbursable only if the elderly person pays 25¢ or ten percent of the cost of the individual fare, whichever is greater.
Transportation Law, *supra* at § 203(5)(iii), 55 P.S. § 600.203(5)(iii).

In October, 1985, PennDOT submitted proposed new regulations to the transportation committees of both houses of the General Assembly and to the Commission as required by the Review Act, *supra* at § 5, 71 P.S. § 745.5. These proposals were also submitted to the Legislative Reference Bureau. The text along with a statement of authority, explanation and request for comments was published in the Pennsylvania Bulletin as required by section 201 of the Commonwealth Documents Law,[4] *supra* at § 201, 45 P.S. § 1201. 15 Pa.Bull. 3944–3955 (1985).

PennDOT's stated purpose in proposing the regulations was to remedy economic abuses of the "shared ride" program by carriers. The agency stated in part:

During 1984–85 it became apparent that the Shared Ride Program was not operating in accordance with the guidelines and directives which had been established by the Department and that significant deviations were taking place. Program audits conducted in the spring of 1985 corroborated these deviations on a widespread scale, especially among the private carriers, and indicated that the adoption of regulations intended to improve oversight and program administration was necessary. Program audits documented such practices as:

---

4.    Except as provided in section 204 an agency shall give, in the manner provided in [45 Pa.C.S. §§ 724, 725] public notice of its intention to promulgate, amend or repeal any administrative regulation. Such notice shall include:

(1) The text of the proposed administrative regulation, except any portions thereof omitted pursuant to section 407 (relating to matter not required to be published), prepared in such a manner as to indicate the words to be added or deleted from the presently effective text, if any.

(2) A statement of the statutory or other authority under which the administrative regulation or change therein is proposed to be promulgated.

(3) A brief explanation of the proposed administrative regulation or change therein.

(4) A request for written comments by any interested person concerning the proposed administrative regulation or change therein.

(5) Any other statement required by law.

Commonwealth Documents Law, *supra* at § 201, 45 P.S. § 1201 (footnotes omitted).

&ast; Carriers overcharging senior citizens

. . . .

&ast; Charging fares and services inconsistent with the Shared Ride Program

. . . .

&ast; Wide disparities in fares

15 Pa.Bull. 3946 (1985). Among other things, the proposed regulations established a limit on a carrier's total reimbursement under the "shared ride" program. That limit was to be based on a "shared ride" fare established by PennDOT or the carrier's PUC approved tariff multiplied by a "shared ride adjustment factor." [5] Proposed Regulation § 425.7(a) (printed in 15 Pa.Bull. 3952–53 (1985)). The legislative committees approved the proposed regulations on the condition that PennDOT address their expressed concerns in the final regulations.[6] PennDOT also received comments from carriers and other interested parties. Based on all of these comments, it revised the regulations.

One change made pursuant to the comments was a simplification of the method for calculating reimbursement limits.[7] The old system of individually set limits or factored PUC tariffs was discarded. In its place uniform per trip and per mile limits were established. These limits were based on 110% of the most recent average operating costs of participating carriers. 16 Pa.Bull. 25 (1986). Different limits were set for trips beginning or ending in Philadelphia, Allegheny County and the rest of the Commonwealth. 67 Pa.Code § 425.6(a).[8] In addition, limits for trips involving

5. The "shared ride adjustment factor" was a productivity factor designed to reflect the amount of time the vehicle was used in "shared ride" transportation.

6. None of them are relevant to this appeal. The changes required by the legislature were made in the final regulations.

7. Other changes included elimination of requirements forbidding trips under ¼ mile and third party sponsorship of senior citizens trips, and simplification of data collection requirements.

8. The per mile limits established are:
   (i) For trips originating or terminating within Philadelphia County, $2.05.

non-ambulatory passengers were increased by 33%. *Id.* at § 425.6(a)(3). Under certain circumstances, a participating carrier may petition PennDOT for a waiver of the limits. *Id.* at § 425.6(a)(6).

The revised regulations were delivered to the Commission on the day before it held public hearings; members of the Commission were orally kept abreast of changes before that. The copy delivered to the Commission clearly showed which portions had been deleted and added. It approved the regulations. They were finally published on January 4, 1986. 16 Pa.Bull. 28–31 (1986).

Appellants then filed a Second Amended Petition for Review in Commonwealth Court. It challenged numerous aspects of the regulations. Judge Crumlish granted Penn-DOT's motion for judgment on the pleadings on most issues,[9] including those at issue here.

Appellants argue that the notice afforded them by Penn-DOT was insufficient and did not comply with the Commonwealth Documents Law. Specifically, they claim that since the method for calculating reimbursement limits was substantially changed interested parties should have an opportunity to comment on the revised regulations under the Commonwealth Documents Law, *supra.*

PennDOT argues that no further notice is required under the Commonwealth Documents Law. Section 202 of the Law states, in relevant part:

> (ii) For trips originating or terminating within Allegheny County, $1.50.
> (iii) For other trips, 70¢
> 67 Pa.Code § 425.6(a)(1).
> The per trip limits established are:
> (1) For trips originating or terminating within Philadelphia County, $11.60.
> (ii) For trips originating or terminating within Allegheny County, $8.90.
> (iii) For other trips, $4.45.
> 67 Pa.Code § 425.6(a)(2).

**9.** Commonwealth Court granted appellants' cross-motion for judgment on the pleadings on a few minor points which are not on appeal before us. It also refused to rule on two issues raised by appellants; they are not on appeal either.

*The agency text of any administrative regulation* or change therein as finally adopted *may contain such modifications to the proposed text as published pursuant to section 201 as do not enlarge its original purpose,* but modifications which enlarge the original purpose of a proposal as published under section 201 shall be republished thereunder prior to final adoption by the agency.

*Id.* at § 202, 45 P.S. § 1202 (emphasis added). It claims the revised regulations did not "enlarge its original purpose."

■ We agree. The method of calculating reimbursement limits was revised to simplify administration. 16 Pa.Bull. 25 (1986). The regulation's purpose is unchanged: to improve the efficiency, effectiveness and accountability of the "shared ride" program under section 203(5) of the Transportation Law, *supra,* 55 P.S. § 600.203(5).[10] The method for calculating reimbursement limits was changed, not the reason for creating limits.

■ Appellants argue that the term "enlarge the purpose" found in section 202 of the Commonwealth Documents Law should be broadly construed to include fundamental changes in methodologies. We find this expansive reading of the statutory language unwarranted. When, as here, a statute's words are clear and unambiguous, the plain language should not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921. Purpose refers to the reason for enacting legislation, not the particular course or scheme chosen to achieve that end.

We can find no indication that the General Assembly intended to enact a broader notice provision. Notice and opportunity to comment on proposed administrative regulations was suggested to the legislature as early as 1943. Joint State Government Commission, Report to the General

10. Indeed, section 425.1 titled "Purpose" was not revised.
The purpose of this chapter is to establish regulations governing shared-ride transportation service reimbursement authorized by section 203(5)(ii) and (iii) of the act (55 P.S. § 600.203(5)(ii) and (iii)). 67 Pa.Code § 425.1.

Assembly on Uniform Practice and Procedure Before Departments, Boards and Commissions 5 (January, 1943). However, no general notice requirement was enacted until the Commonwealth Documents Law was passed in 1968. *See* Report of the Section on Administrative Law, 36 Pa. Bar.Q. 99, 110–12, 115 (January, 1965). There is no recorded debate on the Commonwealth Documents Law. In fact, the bill as drafted by the Pennsylvania Bar Association was passed by the General Assembly almost verbatim. However, in a report which accompanied the proposed bill, the Bar Association stated that the notice provisions were based on the federal Administrative Procedure Act, 5 U.S.C. § 553.[11] The United States Supreme Court has not interpreted this section of the Administrative Procedure Act. However, many lower federal courts have and we have uncovered no decision which has embraced the broad construction urged by appellants.[12] *See, e.g., Daniel Interna-*

11. That section states, in relevant part:

   (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
   (1) a statement of the time, place, and nature of public rule making proceedings;
   (2) reference to the legal authority under which the rule is proposed; and
   (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.
   . . . .
   (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.
   5 U.S.C. § 553(b), (c).

12. The legislature could have used language such as that found in the Model State Administrative Procedure Act if it wanted to provide more expansive notice.

   (a) An agency may not adopt a rule that is substantially different from the proposed rule contained in the published notice of proposed rule adoption. However, an agency may terminate a rule-making proceeding and commence a new rule-making proceeding for the purpose of adopting a substantially different rule.

*tional Corp. v. OSHRC,* 656 F.2d 925, 932 (4th Cir.1981); *BASF Wyandotte Corp. v. Costle,* 598 F.2d 637, 643–44 (1st Cir.1979), *cert. denied* 444 U.S. 1096, 100 S.Ct. 1063, 62 L.Ed.2d 784 (1980); *International Harvester Co. v. Ruckelshaus,* 478 F.2d 615, 631–32 (D.C.Cir.1973); *California Citizens Bank Ass'n. v. United States,* 375 F.2d 43, 48–49 (9th Cir.), *cert. denied* 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967). *See generally* 1 K. Davis, *Administrative Law Treatise* § 6:25 (2d ed. 1978); 1 C. Koch, *Administrative Law and Practice* § 4.6 (1985). The federal courts have only required additional notice when the changes are significant and do not grow out of the rulemaking process. *United Steelworkers v. Marshall,* 647 F.2d 1189, 1221 (D.C.Cir. 1980), *cert. denied* 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). *See also Wagner Electric Corp. v. Volpe,* 466 F.2d 1013, 1019–20 (3rd Cir.1972). The changes PennDOT made to the proposed regulations were a result of the rulemaking process. It revised the reimbursement limits in response to suggestions that it simplify the procedure. 16 Pa.Bull. 24–25 (1986).[13]

> (b) In determining whether an adopted rule is substantially different from the published proposed rule upon which it is required to be based, the following must be considered:
> (1) the extent to which all persons affected by the adopted rule should have understood that the published proposed rule would affect their interests;
> (2) the extent to which the subject matter of the adopted rule or the issues determined by that rule are different from the subject matter or issues involved in the published proposed rule; and
> (3) the extent to which the effects of the adopted rule differ from the effects of the published proposed rule had it been adopted instead.
>
> Model State Administrative Procedure Act (1981) § 3–107, 14 U.L.A. 94 (Supp.1986).

**13.** Appellants cite several cases in support of their argument. All, however, are distinguishable. In *Abington Memorial Hospital v. Heckler,* 576 F.Supp. 1081 (E.D.Pa.1983), *aff'd.* 750 F.2d 242 (3rd Cir.1984), *cert. denied* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985), the regulation was not struck down because it deviated from the originally proposed regulation. It was invalidated because the agency failed to respond to public comments, a requirement under the Administrative Procedure Act. In *Wagner Electric Corp., supra,* the regulation was struck down because the initial notice did not adequately identify the issues involved, not because the final regulations were different

In addition, we believe that appellants' proposed construction would foster an unsound policy. It could easily lead to administrative gridlock by forcing agencies to go through endless iterations before promulgating regulations. Alternatively, it might encourage agencies to ignore productive, beneficial comments in the interest of promulgating regulations without protracted delay. Administrative agencies must be able to fluidly and effectively respond to changing conditions through rulemaking.

We have not been called upon to construe this section before. However, the construction we use today is consistent with that used by Commonwealth Court in the past. *See Community Services Management Corp. v. Dept. of Public Welfare,* 85 Pa.Commonwealth Ct. 512, 482 A.2d 1192 (1984) (additional requirement of hospital certification did not expand original purpose of regulations).

■ Appellants also allege that the regulations were promulgated in violation of the Regulatory Review Act, *supra.* The Review Act was enacted to:

provide a procedure for oversight and review of regulations adopted pursuant to this delegation of legislative power to curtail excessive regulation and to establish a system of accountability so that the bureaucracy must justify its use of the regulatory authority before imposing hidden costs upon the economy of Pennsylvania. It is the intent of this act to establish a method for continuing and effective review, accountability and oversight.

*Id.* at § 2, 71 P.S. § 745.2 (Supp.1986). It created the Independent Regulatory Review Commission to provide this review and oversight. *Id.* at § 4, 71 P.S. § 745.4. The Commission determines if proposed regulations are in the public interest by measuring them against thirteen enumerated criteria. *Id.* at § 5(d), 71 P.S. § 745.5(d).

and expanded the original purpose. Appellants also cite *Automotive Service Councils v. Larson,* 82 Pa.Commonwealth Ct. 47, 474 A.2d 404 (1984), for support. However, it deals with a different issue. In *Automotive Service Councils,* PennDOT unsuccessfully tried to avoid the notice provisions of the Commonwealth Documents Law by invoking the good faith exemption of section 204, *supra,* 45 P.S. § 1204.

The proposed regulations were delivered to the Commission on October 25, 1985, and the revised regulations on November 20, 1985, the day before public hearings were held. Appellants claim that since the revised regulations were delivered late, the Commission could not adequately study them and perform its review function. The Commission's order approving the regulations clearly refutes this claim. It states in part:

We have reviewed this regulation and find it, as amended, to be in the public interest. The modified rule is a clear improvement over those initially proposed, and we trust that as PennDot implements them the primary goal will be to maintain the high level of access to shared-ride service to which the senior citizens of the Commonwealth are entitled. The proposed regulations should have no adverse affect on the Commonwealth, local government or the general public. Therefore, we approve the proposed regulation, as published at 15 Pa.B. 3944, as modified by letter of November 21, 1985, and by verbal agreement during our meeting of the same date.

16 Pa.Bull. 27.[14]

Finally, with respect to these procedural issues, we note that both the Commonwealth Documents Law and the Review Act have the purpose of giving interested parties an opportunity to comment. The statutes do not permit them to sit back and rely on the text of the proposed regulation. They must look to their interest and keep their powder dry throughout the process. Interested parties are promised an opportunity to give their views, not an assurance they will be accepted. In this case, they had the opportunity but other voices prevailed.

■ On the merits, appellants claim that the reimbursement limits established in the final regulations are unrea-

14. Appellants also claim that the Review Act was violated because the Commission did not receive comments on the revised regulations. The Review Act, however, does not require such comment. Nevertheless, the Commission received some 1,500 comments to the original proposed regulations and oral comments to the revised regulations at the November 21, 1985 hearing.

sonable and therefore invalid. Our standard of review over regulations is very limited. We will not substitute our judgment for the agency's and will not strike down regulations unless a clear abuse of discretion is shown or the agency has exceeded its statutory powers. *Pennsylvania Bankers Ass'n. v. Secretary of Banking*, 481 Pa. 332, 392 A.2d 1319 (1978). *See also Uniontown Area School District v. Pennsylvania Human Relations Comm'n.*, 455 Pa. 52, 313 A.2d 156 (1973) (Opinion Announcing the Judgment of the Court).

■ PennDOT has the statutory authority to:
promulgate such rules and regulations as are necessary to carry out the purposes of this subparagraph. The department, in consultation with the Public Utility Commission and the Department of Aging, shall establish reasonable per mile or trip fare limits for purposes of section 203(5)(ii) and (iii).

Transportation Law, *supra* at § 203(5)(v), 55 P.S. § 600.-203(5)(v). It has acted within its statutory powers by establishing per mile and per trip fare limits.

■ We also find no abuse of discretion on this record. PennDOT based the reimbursement limits on the most recent available data on operating costs. That data was submitted to it by participating carriers. The limits are 110% of the average operating cost. This standard is not patently arbitrary or abusive. It is based on presumably accurate statistics dealing with a criteria directly related to required reimbursement. PennDOT also established separate limits for trips beginning or ending in Philadelphia, Allegheny County and the rest of the Commonwealth. This provision simply recognizes that the cost of doing business is appreciably greater in the highly urbanized areas of Philadelphia and Allegheny County than in other areas and is not an abuse of discretion. Similarly, by increasing the reimbursement limits by 33% for trips involving non-ambulatory passengers, PennDOT recognizes and compensates carriers for greater equipment and manpower costs associ-

ated with transporting non-ambulatory individuals. Similarly, PennDOT did not abuse its discretion by increasing compensation for transportation of non-ambulatory persons.

■ Likewise, we do not believe that PennDOT acted arbitrarily by promulgating section 425.6(a)(6). That section provides, in relevant part:

(6) An eligible applicant providing the sole source of shared-ride trips within a county and local transportation organization or county transportation system may request that the Department establish alternative per mile or per trip limits, if unusual local conditions significantly increase the cost of shared-ride service above the limits established under this section.

67 Pa.Code § 425.6(a)(6). PennDOT rationally realized that the costs of operating a transportation system which is the sole source of "shared ride" services in a county could be much higher than average. Such a system might have to provide service over long distances and on low density routes. It also recognized that operating a municipal transportation system presents special problems. Municipal systems largely depend on subsidies from the state and federal governments. For reasons beyond its control, a municipal system may lose funding and require higher reimbursements to continue providing "shared ride" services.

Even so, this section does not create a right to a waiver of the reimbursement limits. It only permits carriers to petition for a waiver. PennDOT will grant or deny the waiver and establish new reimbursement limits based on need.[15]

15. Appellants also suggest that judgment on the pleading was improperly granted on the issue of reasonableness of the reimbursement limits because an issue of material fact exists. They do not, however, dispute that PennDOT calculated the limits from data on operating costs, but complain that its mathematics was never placed on the public record. PennDOT was under no obligation to do so and such an inquiry is not within the scope of review of regulations discussed above. Thus, the only issue of material fact, PennDOT's reasons and criteria for establishing limits, is not in dispute.

We believe that each of these provisions are within Penn-DOT's authority under the Transportation Law and are not arbitrary or abuses of discretion.

The order of Commonwealth Court is affirmed.

NIX, C.J., concurs in the result.

LARSEN, J., files a dissenting opinion in which McDERMOTT and PAPADAKOS, JJ., join.

LARSEN, Justice, dissenting.

I dissent. The new regulations proposed in October, 1985 by the appellee, Penndot, were published in 15 Pa.Bull. 3944–3955 (No. 44, Saturday, November 2, 1985). The portion of the proposed regulations which is relevant here provided as follows:

§ 425.7. Reimbursement criteria and methodology.

(a) Program reimbursement for contractors—except county transportation systems offering free service to senior citizens—will be calculated according to paragraph (1) or (2).

(1) Where a contractor has in effect a Department-approved shared-ride fare structure established under § 425.8 (relating to fares): 9 × total shared-ride fares applicable to eligible senior citizen trips.

(2) Where a contractor does not have in effect a Department-approved shared-ride fare structure established under § 425.8, the Department will adjust the contractor's applicable fare structure to reflect the economics of shared-ride transportation service, and calculate program reimbursement as follows: 9 × total fares applicable to eligible senior citizen trips × shared-ride fare adjustment factor.

(3) For the purposes of paragraphs (1) and (2):

(i) Eligible senior citizen trips = the sum of one way senior citizen passenger trips eligible under the program.

(ii) Shared-ride fare adjustment factor = from _____ (*Editor's Note*: The blank refers to the effective date of the adoption of this proposed rulemaking) through December 31, 1985:

| | | | |
|---|---|---|---|
| (total shared-<br>(ride one-way<br>(trips | ÷ | total number)<br>of live ve-  )<br>hicle hours  ) | ÷ | 3 for ambulatory service, or *<br>2 for nonambulatory service, or<br>2.5 for any combination of ambulatory and nonambu-<br>latory services |

After December 31, 1985:

| (total shared-<br>(ride one-way<br>(trips | ÷ | total number)<br>of live ve-  )<br>hicle hours  ) | ÷ | 4 for ambulatory service, or *<br>2 for nonambulatory service, or<br>3 for any combination of ambulatory and nonambu-<br>latory services |
|---|---|---|---|---|

* this fraction may not exceed 1.

(4) Where a county transportation system offers free service to senior citizens, program reimbursement will be calculated as follows: from _____ (*Editor's Note*: The blank refers to the effective date of the adoption of this proposed rulemaking) through December 31, 1985:

| 9 × | total cost<br>of providing<br>shared-ride<br>service to<br>senior<br>citizens | × | ((total<br>((shared-<br>((ride<br>((one-way<br>((trips | ÷ | total  )<br>number)<br>of live )<br>vehicle )<br>hours  ) | ÷ | 3 for ambulatory service, or 2 )*<br>for nonambulatory service, or  )<br>2.5 for any combination of  )<br>ambulatory and nonambulatory)<br>services  ) |
|---|---|---|---|---|---|---|---|

* this fraction may not exceed 1.

After December 31, 1985:

| .9 × | total cost<br>of providing<br>shared-ride<br>service to<br>senior<br>citizens | × | ((total<br>((shared-<br>((ride<br>((one-way<br>((trips | ÷ | total  )<br>number)<br>of live )<br>vehicle )<br>hours  ) | ÷ | 4 for ambulatory service, or 2 )*<br>for nonambulatory service, or  )<br>3 for any combination of am-  )<br>bulatory and nonambulatory  )<br>services  ) |
|---|---|---|---|---|---|---|---|

* this fraction may not exceed 1.

(b) The maximum reimbursement per eligible senior citizen trip under subsection (a) may not exceed $27—based upon a $30 fare—for trips originating or terminating outside of an urbanized area and for trips for nonambulatory persons, and $18—based upon a $20 fare—for trips originating and terminating within an urbanized area.

(c) Services are eligible for reimbursement under the program only if they are rendered by the applicant or by contractors disclosed in the grant application and approved by the Department.

(d) Surcharges, penalties and no-show fees are ineligible for reimbursement.

One day prior to the day of the hearing on the regulations before the Independent Regulatory Review Commission (IRRC), Penndot delivered to the IRRC a revised draft of

the proposed regulations. On the morning of the hearing, the amended proposed regulations were delivered in final form to the IRRC. The modified regulations contained significant changes in the calculation of reimbursement limitations under the section 203 program. The previously published "reimbursement criteria and methodology" set out above, was completely altered. The IRCC, without the benefit of written comments from interested parties and over the objections of those interested parties in attendance at the hearing, approved the revised regulations. Subsequently, the modified regulations were promulgated by publication in 16 Pa.Bull. 24–31 (No. 1, Saturday, January 4, 1986). The portion of the revised regulations dealing with reimbursement limitations provides as follows:

§ 425.6. Reimbursement limits.

(a) The Department will reimburse each contractor upon the receipt of a properly prepared monthly invoice under § 425.10 (relating to invoicing) an amount equal to 90% of its Pennsylvania Public Utility Commission approved fare or contract rate for each ride up to the following per mile or trip fare limits on reimbursement:

(1) For eligible applicants providing services predominantly utilizing a rate structure based upon mileage, total reimbursement each month may not exceed actual passenger miles of service provided multiplied by the following per mile fare reimbursement limits:

(i) For trips originating or terminating within Philadelphia County, $2.05.

(ii) For trips originating or terminating within Allegheny County, $1.50.

(iii) For other trips, 70¢.

(2) For eligible applicants providing services predominantly utilizing a rate structure based upon an ambulatory one-way per passenger trip fare, total monthly reimbursement may not exceed the actual number of one-way trips provided that month to eligible applicants multiplied

by the following maximum trip fare reimbursement limits:

(i) For trips originating or terminating within Philadelphia County, $11.60.

(ii) For trips originating or terminating within Allegheny County, $8.90.

(iii) For other trips, $4.45.

(3) For services provided to nonambulatory persons, the per trip or per passenger mile reimbursement limits provided by this subsection will be increased by 33⅓%.

(4) The maximum, reimbursement per eligible senior citizen trip under this section may not exceed $27 based upon a $30 fare.

(5) The per trip or per passenger mile reimbursement limits provided by paragraphs (1), (2), and (3) will be reviewed annually by the Department. Not later than November 1 of each year, the Department will notify contractors, eligible applicants, and the transportation committees of the Senate and House of Representatives of Pennsylvania, and will submit a notice to the Legislative Reference Bureau for recommended publication in the *Pennsylvania Bulletin* concerning the initiation of a review. The Department will conduct a public hearing prior to revising the limits. Revised limits will be adopted by a rulemaking modifying the provisions of this section which will establish revised per trip or per passenger mile reimbursement limits adequate to provide fair and reasonable reimbursement to efficiently and economically operating eligible applicants.

(6) An eligible applicant providing the sole source of shared-ride trips within a county and local transportation organization or county transportation system may request that the Department establish alternative per mile or per trip limits, if unusual local conditions significantly increase the cost of shared-ride service above the limits established under this section.

(b) County transportation systems and local organizations will be reimbursed based upon amounts approved by contract with the Department, but not to exceed the limitations provided by subsection (a).

(c) Services are eligible for reimbursement under the program only if they are rendered by the eligible applicants or by contractors disclosed in the grant application and approved by the Department.

(d) Surcharges, penalties, and no-show fees are ineligible for reimbursement.

The appellants argue that the revised section 425.6 setting forth reimbursement limits in the final regulations were adopted and promulgated in violation of the Commonwealth Documents Law. 45 P.S. § 1201, et seq. The appellants assert that the law was violated because the revised regulations were not published as proposed regulations prior to adoption and promulgation. Section 202 of the Commonwealth Documents Law, 45 P.S. § 1202, in pertinent part, provides:

The agency text of any administrative regulation or change therein as finally adopted may contain such modifications to the proposed text as published pursuant to section 201 as do not enlarge its original purpose, but modifications which enlarge the original purpose of a proposal as published under section 201 shall be republished thereunder prior to final adoption by the agency.

1968, July 31, P.L. 769, No. 240, art II, § 202, 45 P.S. § 1202.

The reimbursement limitations set forth in Section 425.6 of the final regulations differ significantly from the limitations contained in Section 425.7 of the proposed regulations. In the final regulations promulgated on January 4, 1986, there is a section by section discussion of the revisions made to the original proposal. In reviewing the reimbursement limitation provisions, it is noted that the finally adopted section "deletes the fare reimbursement factors

based upon minimum productivity measures and establishes per trip or mile fare limits in reimbursement." 16 Pa.Bull. 25. It is also pointed out that in the final regulations, "recognition is given to the operating and economic differences among Philadelphia, Pittsburgh, and other areas of the State." 16 Pa.Bull. 25.

Contrary to the disclaimer contained in the final regulations, and the finding of the majority that the modifications do not enlarge the original purpose of the rules, the significant revisions in the reimbursement limitations do indeed enlarge the purpose of the proposed regulations within the meaning of the Commonwealth Documents Law.

The revisions made to the proposed regulations were substantial. The final regulations significantly limit the reimbursement to carriers in a fashion that is entirely different from the "criteria and methodology" set forth in the proposed regulations. The radical modifications constitute an "enlargement of purpose" in that the regulations as finally promulgated include reimbursement limitation concepts that are foreign to the original proposed regulations. Fairness and Section 1202 of the Commonwealth Documents Law dictate that the modifications should have been republished prior to final adoption. In that way, interested members of the public would have had the opportunity to review and comment upon them prior to adoption and promulgation as final regulations. Because this required statutory procedure was not followed here, I would hold that the reimbursement limitation as set forth in Section 425.6 of the final regulations are invalid.

McDERMOTT and PAPADAKOS, JJ., join in this dissenting opinion.