Peters Brothers, Inc.; H.R. Ewell, Inc.; :
Motor Truck Equipment Company d/b/a :
Kenworth of Pennsylvania; Transteck, :
Inc.; and Pennsylvania Motor Truck :
Association, :
     Petitioners :
          :
  v. : No. 272 M.D. 2023
          :
Pennsylvania Department of :
Environmental Protection of the :
Commonwealth of Pennsylvania; :
Pennsylvania Environmental Quality :
Board of the Commonwealth of :
Pennsylvania; and Jessica Shirley, in her :
official capacity as Interim Acting :
Secretary of the Department of :
Environmental Protection, :
     Respondents : Argued: June 5, 2024

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE STACY WALLACE, Judge
     HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER        FILED: November 21, 2024

  Petitioners Peters Brothers, Inc.; H.R. Ewell, Inc.; Motor Truck Equipment
Company d/b/a Kenworth of Pennsylvania; Transteck, Inc.; and Pennsylvania Motor
Truck Association (collectively Truckers) have filed an original jurisdiction Petition

for Review (PFR) with our Court,[1] through which they seek declaratory and injunctive relief against Respondents Pennsylvania Department of Environmental Protection of the Commonwealth of Pennsylvania; Pennsylvania Environmental Quality Board of the Commonwealth of Pennsylvania; and Jessica Shirley, in her official capacity as Interim Acting Secretary of the Department of Environmental Protection[2] (individually DEP, Board, and Secretary, and collectively Respondents) regarding Respondents' regulations for diesel engine emissions and warranties. In response, Respondents have filed preliminary objections, through which they seek dismissal of the PFR. Upon review, we sustain those preliminary objections in part and dismiss Truckers' PFR without prejudice.

## I. Background

The relevant facts are as follows. In 2002, the Board promulgated administrative regulations that require all heavy diesel engines that are sold or acquired in this Commonwealth to comply with regulations promulgated by the State of California (California), including California's pollution emissions limits and warranty requirements. PFR, ¶¶18-20. The Board's 2002 regulations do not in themselves directly set specific limits or requirements; rather, they incorporate California's regulations by reference. *Id.*, ¶¶21, 29-31. California periodically updates these limits and requirements. As currently constituted, they impose emissions limits and warranty requirements for vehicles that are currently being

---

[1] Truckers consist of a number of trucking companies and truck dealerships, as well as a trucking industry trade association. PFR, ¶¶10-14.

[2] Richard Negrin (Negrin) was the Acting Secretary of the Commonwealth at the time of Truckers filed their PFR. However, Negrin resigned from his position on October 26, 2023, and was replaced on that date by Secretary. As a consequence, Secretary was automatically substituted for Negrin as a named respondent in this matter pursuant to Pennsylvania Rule of Appellate Procedure 502(c), Pa. R.A.P. 502(c).

produced (*i.e.*, the 2024 model year), which become progressively more stringent for future model years. *Id.*, ¶¶43-49. The DEP has elected to suspend enforcement of these new regulations until 2027 model year vehicles have come to market, but has informed Truckers that this suspension does not insulate them against legal challenges brought by third parties. *Id.*, ¶¶50-52, 54-55. Furthermore, the DEP is free to start enforcing these regulations at any point, should it choose to do so. *Id.*, ¶¶50, 53.

On June 3, 2023, Truckers filed their original jurisdiction PFR with our Court. Therein, they challenge the legality of these regulations on a multitude of bases. In Count I, Truckers assert that the warranty regulations are *ultra vires* because Pennsylvania's Air Pollution Control Act ("APCA" or "Act")[3] does not vest the Board with "any authority to promulgate regulation imposing emission system warranty requirements." *Id.*, ¶¶71-75. In Count II, Truckers maintain that the regulations are *ultra vires* under the APCA, because the emissions standards and warranty requirements were not developed in conjunction with and issued by the Pennsylvania Department of Transportation (DOT). *Id.*, ¶¶76-83. In Count III, Truckers allege that the APCA violates the non-delegation doctrine in three ways. *Id.*, ¶¶84-87. "The General Assembly made no basic policy decision as to how to control emissions from heavy diesel trucks with enactment of the [APCA]" *id.*, ¶85; "[t]he General Assembly provided no standard guiding or restraining the . . . Board's exercise of rulemaking discretion in deciding what conduct should be subject to regulation" *id.*, ¶86; and the General Assembly vested the Board with the ability "to regulate conduct that only tangentially or indirectly affects air emissions (i.e., regulation of emission system warranties)[.]" *Id.*, ¶87. In Count IV, Truckers state

---

[3] Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§ 4001-4015.

the APCA also violates the non-delegation doctrine in two ways: "[t]he General Assembly made no basic policy decision to follow California's emission and warranty standards for heavy diesel trucks"; and, to the extent it vests the Board with authority "to adopt any emission and warranty standards that the Board might deem fit," the statutory scheme "provide[s] no standard guiding or restraining the Board's exercise of discretion." *Id.*, ¶¶88-91. In Count V, Truckers insist that the regulations are unlawful because they were not promulgated in compliance with the Commonwealth Documents Law (CDL).[4] *Id.*, ¶¶92-95. In Count VI, Truckers argue that the regulations are unlawful because they were not promulgated in compliance with the Regulatory Review Act (RRA).[5] *Id.*, ¶96-100. Finally, in Count VII, Truckers posit that the regulations are unlawful because they were not promulgated in compliance with 4 Pa. Code § 1.374.[6] *Id.*, ¶¶101-05.

Accordingly, Truckers request several forms of relief. First, a declaratory judgment that the APCA "does not authorize a rolling incorporation of any California law or standard, including California's heavy diesel emission and warranty standards, or that the Act violates the non[-]delegation doctrine if construed as authorizing a rolling incorporation." *Id.*, Wherefore Clause, ¶1. Second, a declaratory judgment "that California's new heavy diesel emission and warranty requirements have no effect in Pennsylvania for lack of statutory authority or because imposition of new California standards violates separation of powers, as

---

[4] Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102-1602, and 45 Pa. C.S. §§ 501-907.

[5] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-745.15.

[6] This Pennsylvania Code provision requires that all proposed regulations be submitted for review by the Governor's General Counsel and Policy Director, as well as by the Secretary of the Budget. 4 Pa. Code § 1.374.

well as the [CDL], the [RRA], and the Pennsylvania Administrative Code[7]." *Id.*, Wherefore Clause, ¶2. Third, an injunction that permanently enjoins Respondents and any private party from enforcing the challenged regulations. *Id.*, Wherefore Clause, ¶3. Finally, an award of costs and expenses, as well as any other relief this Court deems proper. *Id.*, Wherefore Clause, ¶¶4-5.

Respondents filed preliminary objections to the Truckers PFR. Truckers responded in opposition to these preliminary objections and the parties subsequently presented their respective positions during oral argument before an *en banc* panel convened by this Court. As such, Respondents' preliminary objections are now ready for disposition.

## II. Discussion

Respondents offer a multitude of arguments in support of their preliminary objections, which we reorder and summarize as follows.[8] First, we should dismiss

---

[7] The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51-732.

[8]     In ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that [it] may draw from the averments." *Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* This Court should sustain preliminary objections only where "the law makes clear that the petitioner cannot succeed on his claim." *Id.* at 1083.

"[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

**(Footnote continued on next page…)**

5

the entire PFR, because pre-enforcement regulatory challenges of this nature are expressly barred by Section 4.2(e) of the APCA, 35 P.S. § 4004.2(e).[9] Respondents' Br. at 29-32. Second, we should dismiss the entire PFR due to Truckers' lack of standing and the fact that their claims are not yet ripe. This is so because (a) the warranty requirements are suspended and are not being enforced by the DEP; (b) the Environmental Protection Agency (EPA) has not granted a waiver regarding the emissions standards, which are also suspended and are not being enforced by the DEP; and (c) Truckers' concerns about potential third-party enforcement actions are too speculative to be justiciable. *Id.* at 23-29. Third, we should dismiss the entire PFR because Truckers failed to exhaust all available administrative remedies before filing suit. According to Respondents, Truckers could have sought relief by filing an administrative petition with either the Board (as allowed by 1 Pa. Code § 35.18) or the Independent Regulatory Review Commission (as allowed by the RRA). *Id.* at 57-59. Fourth, we should dismiss Count I, because Truckers failed to state a viable *ultra vires* claim therein upon which relief could be granted. This is so because (a) the new regulations are predicated upon discretionary authority that has been statutorily delegated to the Board (through the APCA and Statutory Construction Act of 1972[10]); (b) the regulations were issued in a procedurally proper manner; and (c) the regulations are reasonable. *Id.* at 33-42. Fifth, we should dismiss Count II, because Truckers failed to state a viable *ultra vires* claim therein upon which relief could be granted. This is so because the APCA does not give DOT any role in formulating and/or promulgating such regulations. *Id.* at 42-45. Sixth, we should

---

*M. T. v. Pa. State Police*, 298 A.3d 466, 469 n.5 (Pa. Cmwlth. 2023) (cleaned up).

[9] Added by the Act of July 9, 1992, P.L. 460.

[10] 1 Pa. C.S. §§ 1501-1991.

dismiss Counts III and IV, because Truckers have failed to plead facts establishing that the relevant APCA provisions violate the non-delegation doctrine. This is so because (a) the General Assembly made a basic policy choice by delegating to the Board specific statutory authority to formulate regulations that implement the federal Clean Air Act[11] and regulate emissions from motor vehicles; and (b) the Board has exercised that authority in a manner that is consistent with both that delegated authority and the standards imposed by the General Assembly. *Id.* at 48-51. Seventh, we should dismiss Count VI, because the RRA, by its own terms, does not create a private cause of action. *Id.* at 55-57. Finally, we should dismiss Counts V, VI, and VII, because Truckers have failed to plead facts establishing that the regulations were not promulgated and implemented in compliance with all applicable procedural rulemaking requirements imposed, respectively, through the CDL, the RRA, and 4 Pa. Code § 1.374. *Id.* at 51-54.

In order to dispose of this matter, we need only address Respondents' preliminary objection regarding the APCA's statutory bar against pre-enforcement legal challenges to administrative regulations.[12] Generally speaking, a court electing to embark upon pre-enforcement review of the kind Truckers seek here is very much the exception, rather than the rule. *Bayada Nurses, Inc. v. Dep't of Lab. & Indus.*, 8 A.3d 866, 874-76 (Pa. 2010); *Arsenal Coal Co. v. Dep't of Env't Res.*, 477 A.2d 1333, 1338-39 (Pa. 1984). We must refrain from exercising our original jurisdiction over a pre-enforcement review action of this nature where an adequate statutory remedy is available to a petitioner, such as the ability to lodge an administrative

---

[11] 42 U.S.C. §§ 7401-7675.

[12] Truckers do not dispute that they are seeking pre-enforcement review of the challenged regulations. *See* PFR, ¶¶50-55; Truckers' Br. at 12-13, 21-32.

appeal if and when an agency seeks to enforce its regulations against the petitioner. *See Arsenal Coal*, 477 A.2d at 1338.

However, this jurisdictional constraint evaporates under the right conditions.

> [W]here statutory remedies are unavailable or inadequate, a pre-enforcement regulatory challenge [is] appropriate where there [is] a direct and immediate regulatory impact on the governed industry, and a petitioner allege[s] it [will] suffer ongoing uncertainty in its day-to-day operations and [will] sustain substantial expense complying with the challenged regulations while it proceed[s] through the administrative process[.]

*Bayada Nurses*, 8 A.3d at 876. In such instances, "the hardship thus presented [by a petitioner] suffices to establish the justiciability of the challenge in advance of enforcement." *Arsenal Coal*, 477 A.2d at 1339. Truckers could thus theoretically obtain the pre-enforcement review they currently seek by establishing, to our satisfaction, that the regulations they challenge here foist upon them that kind of direct and immediate hardship.

There is, however, an additional wrinkle in this instance, due to the APCA's *express* prohibition against pre-enforcement challenges to certain kinds of air pollution regulations, which resides in Section 4.2(e) of that law. *See* 35 P.S. § 4004.2(e). The scope of this statutory bar is a matter of first impression; despite the fact that this law is not exactly of modern vintage, our courts have not been called upon before now to interpret its language or consider this specific issue. Accordingly, we look to our canons of statutory construction for guidance regarding how to answer this question.

> The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com. v. McClintic*, 909 A.2d 1241 (Pa. 2006). Thus, statutory construction begins with

8

examination of the text itself. *Se. Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).

In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).

Moreover, although we must "listen attentively to what a statute says, one must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001). We may not insert a word the legislature failed to supply into a statute. *Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth. 2004).

*Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa. C.S. § 1921(c)). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). Our rules of construction forbid a court from adopting an interpretation of ambiguous statutory language that will produce "a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa. C.S. § 1922(1). Furthermore,

[w]hen construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. *Com. v. Mayhue*, 639 A.2d 421, 439 (Pa. 1994). Statutory language must be read in context, "together and in conjunction" with the remaining

9

statutory language. *Pa. Gaming Control Bd. v. Off. of Open Recs.*, 103 A.3d 1276, 1284-85 (Pa. 2014) (citing *Bd. of Rev. of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).

. . . .

A fundamental principle in statutory construction is that we must read statutory sections harmoniously. *Off. of Open Recs.*, 103 A.3d at 1284-85. Parts of a statute that are *in pari materia*, *i.e.*, statutory sections that relate to the same persons or things or the same class of persons and things, are to be construed together, if possible, as one statute. 1 Pa. C.S. § 1932. "If they can be made to stand together, effect should be given to both as far as possible." *Off. of Open Recs.*, 103 A.3d at 1284 (quoting *Kelly v. City of Phila.*, 115 A.2d 238, 245 (Pa. 1955)). In ascertaining legislative intent, statutory language is to be interpreted in context, with every statutory section read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute" as a whole. *Bd. of Rev. of Taxes*, 4 A.3d at 622. We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions, to be effective. 1 Pa. C.S. § 1922. Importantly, this presumption requires that statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so. *Cozzone ex rel. Cozzone v. Workers' Comp. Appeal Bd. (PA Mun./E. Goshen Twp.)*, 73 A.3d 526 (Pa. 2013); *Off. of Open Recs.*, 103 A.3d at 1284-85.

*Tr. Under Agreement of Taylor*, 164 A.3d 1147, 1155, 1157 (Pa. 2017).

Returning to the text of the APCA itself, Section 4.2(e) declares that "[n]o person may file a pre[-]enforcement review challenge under this section based in any manner upon the standards set forth in subsection (b) of this section." 35 P.S. § 4004.2(e). In turn, Section 4.2(b) states:

> **Control measures or other requirements adopted under subsection (a) of this section shall be no more stringent than those required by the Clean Air Act unless authorized or required by this act or specifically**

10

**required by the Clean Air Act. This requirement shall not apply if the [B]oard determines that it is reasonably necessary for a control measure or other requirement to exceed minimum Clean Air Act requirements in order for the Commonwealth:**

> *(1) To achieve or maintain ambient air quality standards;*
>
> (2) To satisfy related Clean Air Act requirements as they specifically relate to the Commonwealth;
>
> (3) To prevent an assessment or imposition of Clean Air Act sanctions; or
>
> (4) To comply with a final decree of a Federal court.

*Id.* § 4004.2(b) (emphasis added). As for Section 4.2(a) of the APCA, it provides:

> In implementing the requirements of section 109 of the Clean Air Act, [42 U.S.C. § 7409, which pertains to national primary and secondary ambient air quality standards,] the [B]oard may adopt, by regulation, only those control measures or other requirements which are reasonably required, in accordance with the Clean Air Act deadlines, to achieve and maintain the ambient air quality standards or to satisfy related Clean Air Act requirements, unless otherwise specifically authorized or required by [the APCA] or specifically required by the Clean Air Act.

*Id.* § 4004.2(a).

Reading these three provisions together leads to the following conclusions. First, the General Assembly has delegated authority to the Board through the APCA, which enables the Board to issue regulations that it concludes are "reasonably required" to ensure that air pollution in our Commonwealth does not exceed the specific limits imposed through the Clean Air Act and the APCA. Second, this authority permits the Board to establish only those regulatory standards that will enable the Commonwealth to meet the *minimum* air pollution control standards set by the Clean Air Act, with limited exceptions. Third, those limited exceptions allow the Board to set more stringent air pollution control standards than those required,

11

but only in the event that it concludes that doing so is "reasonably necessary" to ensure that the Commonwealth is able to satisfy any of four enumerated criteria (achieving/maintaining ambient air quality standards; meeting Commonwealth-specific Clean Air Act obligations; preventing assessment/imposition of Clean Air Act sanctions; and ensuring compliance with a binding order from a Federal court). Fourth, in instances where the Board has set more stringent standards, the APCA bars pre-enforcement challenges "under this section" (*i.e.*, Section 4.2 of the APCA) that "in any manner" implicate or attack those more stringent standards.

This analysis prompts the following question: what exactly did the General Assembly mean through its reference in Section 4.2(e) to "a pre[-]enforcement review challenge under this section"? Section 4.2 does not provide any detailed instructions regarding the procedural steps for challenging Board-issued air pollution control regulations, nor, more broadly speaking, did the General Assembly see fit to clearly define what constitutes a challenge made "under this section."

However, we are able to understand the meaning of that phrase by looking to Section 4.2(d). That provision, which is the only other portion of Section 4.2 that references challenges to Board-adopted air pollution control regulations, reads as follows:

> In any challenge to the enforcement of regulations adopted to achieve and maintain the ambient air quality standards or to satisfy related Clean Air Act requirements, the person challenging the regulation shall have the burden to demonstrate that the control measure or other requirement or the stringency of the control measure or requirement is not reasonably required to achieve or maintain the standard or to satisfy related Clean Air Act requirements.

*Id.* § 4004.2(d). Reading Sections 4.2(d) and 4.2(e) *in pari materia*, we conclude that a "challenge" under Section 4.2 is one that contests "regulations adopted to achieve

12

and maintain the ambient air quality standards or to satisfy related Clean Air Act requirements[.]" *Id.* Therefore, in instances where the Board has adopted a regulation of that nature, and that regulation sets more stringent standards (as allowed by Section 4.2(b)) than those necessary to clear the bare threshold established under the Clean Air Act, Section 4.2(e) bars an individual from challenging that regulation unless and until an enforcement action is lodged against them.

Such is the case here. In this instance, the Board expressly determined in 2002, when promulgating the challenged regulations, that "[t]his final-form rulemaking is necessary and appropriate for administration and enforcement of the authorizing acts identified in Section C of this Preamble [to the text of the rule itself,] and is reasonably necessary to achieve and maintain the [n]ational ambient air quality standards for ozone." 32 Pa. B. 2333 (2002). The "authorizing acts identified in Section C" are specifically Sections 5(a)(1) and 5(a)(7) of the APCA, which respectively "grant[] the [Board] the authority to adopt rules and regulations for the prevention, control, reduction and abatement of air pollution in this Commonwealth[, . . . and] to adopt regulations designed to reduce emissions from motor vehicles." *Id.* at 2327. Furthermore, while not directly referenced, the Board's determination implicitly invokes Section 4.2(b) of the APCA, as the Board clearly predicated these regulations upon a conclusion that heightened limitations on ozone emissions, ones that go beyond those required under the Clean Air Act, are needed in order for the Commonwealth to comply with the relevant ambient air quality standards. *See id.* at 2327-33. It follows, then, that Section 4.2(e)'s bar against pre-enforcement review of regulations issued pursuant to Section 4.2(b) applies here and deprives us of jurisdiction to consider Truckers' challenge to the aforementioned

emissions limitations and warranty requirements at this juncture. *Cf. In re Bruno*, 101 A.3d 635, 676-77 (Pa. 2014) (General Assembly has authority to constrain the jurisdiction of our courts, but must do so in a constitutionally compliant manner); *S. Pines Assocs. by Goldmeier v. United States*, 912 F.2d 713, 716 (4th Cir. 1990) (noting that Congress has used the Clean Air Act and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980[13] to strip the federal courts of jurisdiction to conduct pre-enforcement review of certain EPA actions).

### III. Conclusion

In light of the foregoing, we sustain Respondents' preliminary objections in part, on the basis that Truckers' action is barred by Section 4.2(e) of the APCA, and dismiss Truckers' PFR without prejudice. Furthermore, we grant Truckers' request for leave to file an amended PFR[14] and direct them to do so within 30 days.[15]

ELLEN CEISLER, Judge

---

[13] 42 U.S.C. §§ 9601-9675.

[14] Truckers made this request in their brief in opposition to Respondents' preliminary objections. *See* Truckers' Br. at 32 (cleaned up) ("[If] judicial review is denied on this ground, . . . Truckers request leave to file an amended complaint to challenge the legality of Section 4.2(e)'s bar to pre-enforcement litigation.").

[15] Due to our disposition of this matter, we decline to address the merits of Respondents' remaining preliminary objections.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peters Brothers, Inc.; H.R. Ewell, Inc.; :
Motor Truck Equipment Company d/b/a :
Kenworth of Pennsylvania; Transteck, :
Inc.; and Pennsylvania Motor Truck :
Association, :
               Petitioners :
  :
     v. : No. 272 M.D. 2023
  :
Pennsylvania Department of :
Environmental Protection of the :
Commonwealth of Pennsylvania; :
Pennsylvania Environmental Quality :
Board of the Commonwealth of :
Pennsylvania; and Jessica Shirley, in her :
official capacity as Interim Acting :
Secretary of the Department of :
Environmental Protection, :
               Respondents :

# **O R D E R**

AND NOW, this 21st day of November, 2024, it is hereby ORDERED:

1. Respondents Pennsylvania Department of Environmental Protection of the Commonwealth of Pennsylvania; Pennsylvania Environmental Quality Board of the Commonwealth of Pennsylvania; and Jessica Shirley, in her official capacity as Interim Acting Secretary of the Department of Environmental Protection's preliminary objections to Petitioners Peters Brothers, Inc.; H.R. Ewell, Inc.; Motor Truck Equipment Company d/b/a Kenworth of Pennsylvania; Transteck, Inc.;

and Pennsylvania Motor Truck Association's (collectively Truckers) Petition for Review (PFR) are SUSTAINED IN PART;

2. Truckers' PFR is DISMISSED WITHOUT PREJUDICE, on the basis that their claims are barred by Section 4.2(e) of the Air Pollution Control Act, 35 P.S. § 4004.2(e);

3. Truckers are granted leave to file an amended PFR within 30 days.


_____

ELLEN CEISLER, Judge

Peters Brothers, Inc.; H.R. Ewell, Inc.; :
Motor Truck Equipment Company d/b/a :
Kenworth of Pennsylvania; Transteck, Inc.; :
and Pennsylvania Motor Truck Association, :
                        Petitioners :
                                     :
            v.                    :   No. 272 M.D. 2023
                                       :
Pennsylvania Department of Environmental :   Argued: June 5, 2024
Protection of the Commonwealth of :
Pennsylvania; Pennsylvania Environmental :
Quality Board of the Commonwealth of :
Pennsylvania; and Jessica Shirley, in her :
official capacity as Interim Acting :
Secretary of the Department of :
Environmental Protection, :
                        Respondents :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MATTHEW S. WOLF, Judge

***OPINION NOT REPORTED***

DISSENTING OPINION
BY JUDGE McCULLOUGH              FILED: November 21, 2024

          Because I cannot agree with the Majority's conclusion that the claims Truckers raised in their Petition for Review (PFR) are barred by Section 4.2(e) of Pennsylvania's Air Pollution Control Act (APCA)[1], 35 P.S. §4004.2(e), I respectfully dissent.

---

[1] Act of Jan. 8, 1960, P.L., (1959) 2119, *as amended*, added by the Act of July 9, 1992, P.L. 460.

Section 4.2(e) of the APCA bars pre-enforcement legal challenges to administrative regulations under certain limited circumstances. It states: "[n]o person may file a pre-enforcement review challenge under this section based in any manner upon **the standards set forth in subsection (b)** of this section." 35 P.S. § 4004.2(e) (emphasis added). In turn, Section 4.2(b)(1) provides in relevant part:

> (b) Control measures or other requirements adopted under subsection (a) of this section shall be **no more stringent** than those required by the Clean Air Act unless authorized or required by this act or specifically required by the Clean Air Act. This requirement shall not apply if the board determines that it is reasonably necessary for a control measure or other requirement **to exceed minimum Clean Air Act [(CAA)] requirements** in order for the Commonwealth:
>
> (1) To achieve or maintain ambient air quality standards[.]

35 P.S. § 4004.2(b)(1) (emphasis added).

In my view, the bar against pre-enforcement review contained in Section 4.2(e) of the APCA does not apply in this case because Truckers **do not allege** a violation of "the standards set forth in subsection (b)" and do not argue that the regulations at issue are more stringent than required by the CAA.

In fact, the thrust of Truckers' claims **do not hinge on the substance** of the challenged rules at all. For example, as noted by the Majority:

> In Count I, Truckers assert that the warranty regulations are *ultra vires* because [the APCA] does not vest the Board with any **authority** to promulgate regulation imposing emission system warranty requirements. In Count II, Truckers maintain that the regulations are *ultra vires* under the APCA, because the emissions standards and warranty requirements **were not developed in conjunction with** and issued by the Pennsylvania Department of

Transportation (DOT). In Count III, Truckers allege that the APCA violates the non-delegation doctrine in three ways.

(Majority Slip Op., at 3) (citations and quotation marks omitted; emphasis added.)

Thus, the core of Truckers' claims challenge the Board's **authority** to promulgate rules governing emissions standards and assert that it failed to follow appropriate **procedure**. Truckers' arguments do not challenge the stringency or even the substance of the regulations themselves under Section 4.2(b) of the APCA, and instead focus on the Board's power to adopt them. Because Truckers' claims do not implicate Section 4.2(b) of the APCA, they are not subject to Section 4.2(e)'s bar on pre-enforcement judicial review and are therefore reviewable by this Court on the merits.[2]

In sum, I would overrule Respondents' preliminary objections in their entirety, and address Truckers' claims on the merits.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Dumas and Judge Wallace join in this dissent.

---

[2] Additionally, I note my disagreement with the Majority's statement that, "[r]egardless of whether a statute is deemed **ambiguous or not**, our rules of construction forbid a court from adopting an interpretation that will produce a result that is absurd, impossible of execution[,] or unreasonable. 1 Pa.C.S. § 1922(1)." (Majority Slip Op., at 9) (emphasis added). To the contrary, our caselaw makes clear "that resort to the rules of statutory construction is to be made **only when there is an ambiguity** in the provision." *Thomas Jefferson University Hospital, Inc. v. Pennsylvania Department of Labor & Industry*, 162 A.3d 384, 389 (Pa. 2017) (emphasis added).